**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 15-6163

KENROY LLOYD BENFORD,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:14-CR-00321-D-1)**
_____

Kyle Edward Wackenheim, Research and Writing Attorney (Paul Antonio Lacy, Assistant Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

David McCrary, Assistant United States Attorney (Mark A. Yancey, Acting United States Attorney, and Julia E. Barry, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Oklahoma City, Oklahoma, for Plaintiff - Appellee.
_____

Before **PHILLIPS**, **BALDOCK**, and **McHUGH**, Circuit Judges.[*]
_____

**BALDOCK**, Circuit Judge.
_____

[*] The Honorable Neil. M. Gorsuch was an original member of the panel that heard oral argument. He did not participate in the resolution of this case or the preparation of this opinion due to his ascent to the United States Supreme Court. The Honorable Carolyn B. McHugh replaced him on the panel.

A jury convicted Kenroy Benford of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on his constructive possession of a loaded pistol that police seized from an apartment bedroom he shared with his girlfriend. On appeal, Benford argues the district court erred in three ways: (1) it abused its discretion by admitting evidence under Federal Rule of Evidence 404(b) about (i) his possession of a different firearm during a recent sidewalk confrontation, and (ii) text messages he had sent three months earlier suggesting he had firearms to trade; (2) it let the jury's guilty verdict stand despite insufficient evidence that he had constructively possessed the pistol in the apartment by knowingly having the power to exercise dominion or control over the pistol; and (3) it incompletely instructed the jury on constructive possession by not advising the jury that it could convict only if it also found that Benford intended to exercise dominion or control over the pistol. We affirm the district court's evidentiary rulings and its denials of Benford's motions for acquittal, but we reverse and remand for a new trial based on the erroneous jury instruction.

## I.

On May 21, 2014, Oklahoma City Police Department officers arrived at 5313 Willow Cliff Road, Apartment 232, Oklahoma City, to execute a search warrant. Benford lived in that apartment with his girlfriend, Adrian Galloway. Soon after arriving, the officers saw Benford leave the apartment and get into his and Ms. Galloway's automobile. Before he could drive away, the officers detained him.

2

After detaining Benford, officers executed the search warrant at the apartment, where they encountered Ms. Galloway and a young child. Under the mattress in the master bedroom, officers found documents tying Benford to the apartment—a recent letter to him from a government agency, his W-2 statement, and his recent pharmacy receipt.[1] In the master bedroom's closet, officers saw an adult male's clothing consistent with Benford's size, but did not find evidence of any male besides Benford residing in the apartment. On the bedroom floor, officers saw a black computer bag next to a night stand, about two-and-a-half feet from the side of the bed. When standing over the bag and looking down inside the front open pouch, but without touching the bag, the officers could see a firearm. The officers seized the firearm, a loaded Lorcin .25 caliber semiautomatic handgun with pink grips. Officers did not find any documents or other items indicating whether Benford, Ms. Galloway, or someone else primarily used the bag.

After Benford received a *Miranda* warning and waived his rights, he admitted that he lived in Apartment 232 with Ms. Galloway. When Sergeant Harmon told Benford that the officers had found a small silver automatic firearm with pink grips in a bag in the bedroom, Benford registered no surprise, but said, "I guess I'll have to take the charge." R. Vol. 3 at 74. The officers arrested Benford, and a grand jury

---

[1] All three documents were addressed to Benford. The W-2 statement and the pharmacy receipt were addressed to Benford at 2600 SW 102nd Street, Oklahoma City, Oklahoma. Benford's mother had lived at that address three years before. The Department of Human Services letter was addressed to Benford at 5304 Willow Cliff Road (the general address for the apartment complex), Apartment 232.

later indicted him on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Shortly after the search at the Willow Creek apartments, officers executed a search warrant on the cell phone seized from Benford the day he was arrested. In a text exchange from February 11, 2014, about three months before Benford's arrest, Benford had texted someone about whether a motor was still for sale and asked what he could trade for it. The motor seller responded that he would trade for "[g]uns, tools, lathe and/or mill tooling. H-D stuff." Supp. Vol. 1 at 29. Benford asked what kind of guns, and the motor seller responded, "Concealed carry or a 12 ga."[2] *Id.* Benford replied, "I got some nice toys ;)" and promised to get back to the person the next day.[3] *Id.*

The government also learned about an incident at the Willow Cliff apartments that occurred nineteen days before Benford's arrest in which Benford possessed a different gun. On May 2, 2014, Misty Dibler, her husband, and her 12-year-old daughter were walking their dog by Benford's apartment building when Benford's unleashed dog attacked their dog. As Ms. Dibler and Benford argued about the dog attack, Benford told Ms. Galloway to "go get a gun." R. Vol. 3 at 142. Ms. Galloway went upstairs into a second-floor apartment and then met Benford at a

---

[2] At trial, an inspector with the police department testified that the reference to "12 ga." indicated 12-gauge.

[3] At trial, Benford disputed whether the reference to toys meant guns. But defense witness Oteshia Butler, the mother of one of Benford's sons, testified that in the context of the text messages, toys probably meant guns.

4

spot halfway up the stairs out of Ms. Dibler's view.  Benford then reapproached Ms. Dibler, voiced obscenities, and, from about five feet away, pointed a black handgun at her and waved it around.  When Ms. Dibler dialed 911, Benford left in Ms. Galloway's car.

Under Federal Rule of Evidence 404(b)(1), Benford moved *in limine* to exclude his text messages and Ms. Dibler's testimony.  Relying on Rule 404(b)(2), the government contended that the disputed evidence of prior weapon possession was admissible for a purpose other than to prove character or propensity—namely, to help prove that Benford knew the Lorcin pistol was in his apartment and that he constructively possessed it.  The district court agreed with the government and ruled the evidence admissible.

At trial, the parties stipulated that Benford had a prior felony conviction and that the Lorcin pistol had affected interstate commerce.  The sole issue for the jury was whether Benford had knowingly possessed the pistol "[o]n or about May 21, 2014." R. Vol. 1 at 108.  To prove constructive possession, the government relied on the location and accessibility of the pistol in the bedroom; Benford's statement and reaction when told that the police had found the pistol; Benford's text messages; and Benford's and his girlfriend's knowledge of, and ability to retrieve, a different handgun three weeks earlier from the same apartment.  After deliberating for one hour and twenty-five minutes, the jury found Benford guilty of being a felon in possession of a firearm.  Benford now appeals.

5

## II.

Benford argues the district court erred in admitting the text messages from his cell phone from several months earlier indicating he had firearms to trade and Ms. Dibler's testimony regarding a prior altercation during which Benford possessed a different firearm. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006). "We will not reverse a district court's ruling if 'it fall[s] within the bounds of permissible choice in the circumstances' and is not 'arbitrary, capricious or whimsical.'" *Id.* (alteration in original) (quoting *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997)).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving . . . intent [or] knowledge . . . ." Fed. R. Evid. 404(b)(1)–(2). To be admissible under Rule 404(b)(2), evidence of other crimes, wrongs, or acts must satisfy four conditions: (1) the government must offer the evidence for a proper purpose; (2) the evidence must be relevant; (3) the evidence's potential for unfair prejudice must not substantially outweigh its probative value under Rule 403; and (4) the district court must give a proper limiting instruction, if requested by the defendant. *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). Benford argues that the government failed to satisfy the first three conditions. As explained below, we conclude the district court acted within its discretion in admitting evidence

6

of Benford's text messages and in allowing Ms. Dibler's testimony about Benford's recent possession of a different handgun.

An often-cited case on the propriety of 404(b)(2) evidence to help prove constructive possession of firearms is *United States v. Moran*, 503 F.3d 1135 (10th Cir. 2007). In that case, officers responded to complaints that Moran was trespassing on private property to reach a national forest for hunting. *Id.* at 1138. After officers stopped Moran, who was driving his girlfriend's SUV, they "saw the butt of a rifle stock sticking out of an unzipped rifle case on the back seat." *Id.* at 1139. One seat over, the officers saw a bow and arrows (it was bow-hunting season). *Id.* Moran said the rifle belonged to his girlfriend. *Id.* When an officer removed the rifle, he asked Moran whether the rifle was loaded, and Moran told him that it was. *Id.* When asked why he had the rifle, Moran said that "he always had a rifle in his vehicle." *Id.* The government charged Moran with being a felon in possession of a firearm. *Id.* At trial, Moran claimed that he had not known his girlfriend's rifle was in her car. *Id.* at 1144. To prove that Moran had knowingly possessed the rifle, the government relied in part on evidence that he had knowingly possessed a different firearm eleven years earlier (as shown by his felon-in-possession conviction).

On appeal, we ruled that the district court acted within its discretion in admitting the Rule 404(b)(2) evidence. First, we explained that the government offered, and the district court admitted, the evidence for the proper *purpose* of showing Moran's knowledge; that is, to show that he knowingly possessed the rifle. *Id.* The prior conviction, which demonstrated that Moran knowingly possessed a

7

firearm at another point in time, was also *relevant* to show knowledge: "Because the prior conviction required the same knowledge, evidence of the conviction had a 'tendency to make the existence of' Mr. Moran's knowledge of the rifle in the present case 'more probable . . . than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 401 (2007)). While we acknowledged that the use of prior firearm possession to prove knowledge "involves a kind of propensity inference (i.e., because he knowingly possessed a firearm in the past, he knowingly possessed the firearm in the present case)," we still approved its admission "as long as it tends to prove something other than criminal propensity." *Id.* at 1145. Finally, in considering the admissibility of the evidence under Rule 403, we concluded that Moran's earlier firearm possession "was sufficiently similar to have probative value in proving knowledge" and that the district court did not abuse its discretion in determining that the evidence's potential for unfair prejudice did not substantially outweigh its probative value. *Id.* at 1145–46.[4]

---

[4] In *United States v. Trent*, 767 F.3d 1046, 1050 (10th Cir. 2014), *abrogated on other grounds by Mathis v. United States*, 136 S. Ct. 2243 (2016), we expressed concern about *Moran* and the danger of unfair prejudice in allowing evidence of earlier possession of firearms. We explained that courts should "be hesitant" to allow this evidence because of its "great danger of unfair prejudice." *Id.* We also noted that other circuits have rejected evidence of possession of a different firearm because that evidence served to establish only the defendant's criminal disposition. *Id.*; *see, e.g.*, *United States v. Moore*, 709 F.3d 287, 295–96 (4th Cir. 2013) ("[E]vidence of Moore's possession of a different type of firearm, introduced via Rule 404(b), served only to establish Moore's criminal disposition and was therefore inadmissible."). While we expressed caution, we ultimately held the district court did not abuse its discretion in admitting evidence of a prior conviction in *Trent*. 767 F.3d at 1050. *Moran* remains the law of this circuit absent en banc reconsideration or a superseding

As in *Moran*, the government offered the text messages and Ms. Dibler's testimony for the proper purpose of proving knowledge: that Benford knew the Lorcin pistol was inside the bedroom. And, like *Moran*, the evidence was relevant for that proper purpose. Benford indicated in his text messages that he had guns to trade for a motor, and Ms. Dibler testified that Benford actually held a firearm during an altercation. In the same way that Moran's prior firearm possession supported the inference that he had the same knowledge in the context of the charged offense, so too does Benford's past firearm possession suggest he knowingly possessed the Lorcin pistol. *See Moran*, 503 F.3d at 1144; *United States v. McGlothin*, 705 F.3d 1254, 1263 (10th Cir. 2013) ("[D]efendant's prior acts of weapon possession are relevant for the proper purpose of demonstrating the charged act of firearm possession was knowingly undertaken.").

We also reject Benford's argument that the danger of unfair prejudice substantially outweighed the evidence's probative value. The evidence admitted here is more probative of Benford's knowledge of the Lorcin pistol than was the Rule 404(b) evidence admitted in Moran's case to show his knowledge of the rifle found on the back car seat. Approximately three months before Benford's arrest, Benford strongly implied he had multiple guns to trade for a motor. And nineteen days before his arrest, Benford directed his girlfriend to retrieve a gun from the same apartment in which police found the Lorcin pistol, and then proceeded to actually hold the

---

contrary Supreme Court decision. *United States v. McGlothin*, 705 F.3d 1254, 1263 n.13 (10th Cir. 2013).

firearm as he waved it and pointed it at Ms. Dibler and her family. In contrast, Moran possessed a firearm in a different location eleven years earlier. Additionally, when a defendant is not the sole occupant of the premises where the gun was found, "the question of knowing possession [is] more debatable . . . , which weighs in favor of admission despite the possibility of unfair prejudice." *United States v. Trent*, 767 F.3d 1046, 1050 (10th Cir. 2014), *abrogated on other grounds by Mathis v. United States*, 136 S. Ct. 2243 (2016). Benford argues the evidence was unduly prejudicial in that it portrayed him as a black market guns trader and hostile neighbor, but he greatly downplays the probative value of the evidence in this case. In view of *Moran*, we fail to see how the district court abused its discretion in admitting the 404(b) evidence.[5] *See Trent*, 767 F.3d at 1049–50 (holding the "district court did not abuse its discretion in admitting" evidence of earlier possession of a firearm to show that the defendant had knowingly possessed firearm found in car).

### III.

Benford contends the evidence was insufficient to support his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). We review Benford's insufficiency-of-the-evidence claim *de novo*. *United States v.*

---

[5] Here, the district court gave limiting instructions, advising the jury that it could consider the evidence "only as it bears on the defendant's knowledge of possession of firearms and no other purpose." R. Vol. 3 at 138. The district court also instructed that even if Benford had committed similar acts, it "does not mean that [he] necessarily committed the act charged in this case." *Id.* Before the jury deliberated, the district court again instructed the jury to consider the text messages and Ms. Dibler's testimony "only as it bears on the defendant's knowledge." R. Vol. 1 at 130.

*Morales*, 758 F.3d 1232, 1235 (10th Cir. 2014). Evidence is sufficient to support a conviction if, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Gallant*, 537 F.3d 1202, 1222 (10th Cir. 2008). We analyze the sufficiency of the evidence under the law in effect at the time of trial. *See United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir. 1995) (concluding the evidence of "use" of a firearm under 18 U.S.C. 924(c) was sufficient under law governing at trial, but remanding for a new trial because we were uncertain how a jury would decide the case if properly instructed under the Supreme Court's definition of "use" given after Wacker's trial); *see also United States v. Houston*, 792 F.3d 663, 669–70 (6th Cir. 2015) (measuring sufficiency of evidence under the law and jury instruction given at trial, citing *Wacker* among other circuit cases holding the same way).

To support a conviction under 18 U.S.C. § 922(g)(1), the government had the burden to prove beyond a reasonable doubt that (1) Benford was previously convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce. *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004), *overruled on other grounds by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016). The parties stipulated to the first and third elements, and thus the only issue at trial was whether Benford knowingly possessed the Lorcin firearm. Benford argues the evidence on this element was insufficient.

Possession under § 922(g)(1) may be either actual or constructive. *Colonna*, 360 F.3d at 1178. Because Benford did not actually possess the firearm at the time of his arrest, the government argued he constructively possessed the firearm. At the time of Benford's trial, our controlling precedent declared that "[c]onstructive possession exists when a person 'knowingly holds the power and ability to exercise dominion and control over [a firearm].'" *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007) (second alteration in original) (quoting *United States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004), *abrogated by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016)). When a defendant has exclusive possession of the premises on which a firearm is found, a jury may in most cases infer that a defendant has knowledge, dominion, and control of a firearm based on that exclusive possession alone. *Jameson*, 478 F.3d at 1209. But when, as here, a defendant jointly occupies the premises on which the firearm is found, we have required the government to show a nexus between the defendant and the firearm—specifically, that the defendant had knowledge of and access to the firearm. *Id.*

Viewing the evidence in favor of the government, we believe a reasonable jury could easily conclude that Benford knew of and had access to the Lorcin pistol, and thus, a jury could infer he had dominion and control of it. Officers searched the apartment shortly after seeing Benford leave it, and Benford admitted that he lived there with his girlfriend. Officers seized the pistol after finding it in the open front pouch of a computer bag within two-and-a-half feet of Benford and Ms. Galloway's bed and in the same room as Benford's personal belongings. *See United States v.*

12

*Ledford*, 443 F.3d 702, 705, 714–17 (10th Cir. 2005) (affirming constructive possession of a firearm found in a dresser in the bedroom Ledford occupied with his wife, but the wife referred to the dresser as Ledford's), *abrogated by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016); *United States v. Hien Van Tieu*, 279 F.3d 917, 922 (10th Cir. 2002) (affirming constructive-possession conviction where firearm was found in bedroom in which defendant slept and stored his personal effects, even though the door had no lock and other family members and friends lived in the residence), *abrogated by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016).

Further, Benford's own words help prove that he knew the pistol was in the apartment. When told that police had found the pistol, Benford was unfazed, telling the officer, "I guess I'll have to take the charge." R. Vol. 3 at 74. Though Benford could have meant different things by that statement, the jury could reasonably have viewed Benford's statement as an admission that he knew the Lorcin pistol was in the apartment and that he had full access to it there. Based on Ms. Dibler's testimony, the jury could likewise reasonably conclude that, since Benford directed his girlfriend to "go get a gun" from the apartment three weeks earlier, he also knew of and had access to the Lorcin firearm in the bedroom. Similarly, a jury could rely in part on Benford's text messages from three months earlier indicating he had guns to trade for a motor to likewise bolster its conclusion that Benford knew of and had access to the Lorcin pistol.

Viewing this evidence in favor of the government, we conclude that a reasonable jury could find beyond a reasonable doubt that Benford knew the pistol

13

was in the apartment and that he had power to exercise dominion or control over it. Thus, under the law in effect at the time of trial, the government presented sufficient evidence to sustain the jury's finding that at arrest Benford knowingly had constructive possession of the pistol.

**IV.**

Benford's final argument is that the district court improperly instructed the jury on constructive possession when it failed to instruct that Benford must have intended to exercise control over the pistol. In *United States v. Little*, 829 F.3d 1177 (10th Cir. 2016), we explained that the Supreme Court's decision in *Henderson v. United States*, 135 S. Ct. 1780 (2015), "change[d] the law of constructive possession in our circuit" so that "constructive possession requires both the power to control an object *and intent to exercise that control*." 829 F.3d at 1182 (emphasis added). Because Benford's case is on direct appeal, Benford gets the benefit of *Little*'s ruling. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

Benford did not raise the jury-instruction error before the district court. We thus review for plain error.[6] *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (en banc) (rejecting in the criminal context the argument that an intervening Supreme Court decision that alters well-settled law precludes plain-error

---

[6] Because we decided *Little* after the parties' original briefing, Benford submitted a letter under Fed. R. App. P. 28(j) arguing that the government had presented insufficient evidence to prove intent to exercise dominion or control. After arguments, we requested supplemental briefing on the question whether any jury-instruction error would satisfy the plain-error standard.

14

review). Benford must establish that the district court committed error that is plain and that the error affects his substantial rights. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). We may then exercise our "discretion to correct the forfeited error if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). We apply plain error "less rigidly when reviewing a potential constitutional error," *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001), which is the case here because "an improper instruction on an element of the offense violates the Sixth Amendment's jury trial guarantee," *Neder v. United States*, 527 U.S. 1, 12 (1999).

**A.**

We agree with the parties that Benford has satisfied the first two prongs of the plain-error analysis. The district court instructed the jury that constructive possession exists when a person "knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons." Vol. 1 at 125. *Little* is clear, however, that constructive possession also requires *intent* to exercise control. 829 F.3d at 1182. The district court's omission of the intent element is error, and that error is "clearly contrary to the law at the time of appeal." *Johnson v. United States*, 520 U.S. 461, 468 (1997) (stating "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration").

15

**B.**

We turn to the third prong of the plain-error analysis: whether the instructional error affected Benford's substantial rights. To make this showing, Benford has the burden to "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez*, 136 S. Ct. at 1343 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)). This reasonable probability standard does not require Benford to prove by a preponderance of the evidence that, but for the error, the outcome would have been different. *Dominguez Benitez*, 542 U.S. at 84. Instead, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Wolfname*, 835 F.3d 1214, 1222 (10th Cir. 2016) (quoting *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014)). "When a district court gives a legally incorrect jury instruction on the principal elements of the offense or a defense, we often have concluded that the legal error affected the outcome of the trial proceedings." *United States v. Duran*, 133 F.3d 1324, 1333 (10th Cir. 1998). A comparison of our recent cases addressing the new intent element with the strength of the evidence in this case leads us to conclude a reasonable probability exists that, had the jury been instructed on the intent element, it would not have convicted Benford.

In *United States v. Little*, we held that the district court's error in omitting the intent-to-exercise-control element of constructive possession was harmless error because the evidence at trial compelled the conclusion that Little intended to exercise control over the weapons. 829 F.3d at 1179. Officers arrived at Little's residence to investigate a tip

16

that Little had stolen seven firearms from a local firearms shop. 829 F.3d at 1180. After speaking with the owner of the property, and seven-and-a-half minutes after arriving on the scene, an officer saw Little exit the six-by-eight foot well house he rented and in which he resided. *Id.* When the officers executed a search warrant on the well house, they saw shotgun shells on a shelf below eye level and two firearms that matched guns stolen in the burglary, including a loaded assault rifle inside a duffel bag under or inside a sleeping bag on the bed and a shotgun under the bed. *Id.* At trial, the property owner testified that the last time she entered the well house was a week after Little moved in; that she saw Little access the well house on a daily basis but never saw anyone else enter; that Little installed a lock on the well house door about a week before the search and that he did not give her a key; and that when she showed Little the police inventory report after the search, he responded, "They only found two?" *Id.* at 1180–81. (alteration in original omitted). But the officers did not recall seeing a lock on the well-house door, and the door was unlocked when they searched it. *Id.* A jury convicted Little for being a felon in possession of the firearms and ammunition from the well house. *Id.*

At trial and again on appeal, Little argued the district court erred by failing to instruct the jury that it must find he intended to exercise dominion or control of the firearms and ammunition. *Id.* at 1182. Relying on *Henderson*, we agreed the district court erred in its constructive-possession instruction. *Id.* at 1183. We reviewed for harmless error since Little preserved his challenge, which required us to analyze "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 1183 (quoting *United States v. Sorensen*,

17

801 F.3d 1217, 1229 (10th Cir. 2015)). But because the government did not "thoroughly develop[] its harmlessness argument," we could affirm "only if the harmlessness of the error [wa]s certain." *Id.* at 1183 n.4. Still, we affirmed Little's conviction, concluding "a reasonable jury would be compelled to conclude that Little intended to exercise control over the weapons" based on the following: (1) substantial evidence that Little had exclusive possession of the well house and was its sole occupant; (2) Little's comment to the property owner indicating he was surprised the officers found only two firearms after their search; (3) the officers' seeing Little leave the small well house after being in it for seven-and-a-half minutes; and (4) the plainly visible ammunition and the weapons on and under Little's bed. *Id.* at 1183. We explained that, generally, a jury may (but does not have to) infer constructive possession when a defendant has exclusive control of the premises in which the firearm is found, but in the specific circumstances in that case, we had no doubt a jury would find Little intended to control the ammunition and firearms in the well house. We concluded "there is no reasonable possibility that the jury would have found that Little had knowledge of the weapons at issue but lacked intent to exercise control over them." *Id.*

Although we review here for plain error rather than harmless error, we are not left with the same certainty that a jury would be compelled to find Benford intended to exercise control over the Lorcin pistol. Instead, the comparatively weaker evidence on intent undermines our confidence in the outcome. The government contends the same evidence that convinced the jury that Benford knew of and had

18

access to the Lorcin pistol also leads to the conclusion that he intended to exercise control of it, including (1) Benford's "admission" that he possessed the firearm when he said, "I guess I'll have to take the charge"; (2) the pistol's presence in the open pouch of a computer bag in the jointly-occupied bedroom; and (3) during an altercation in the apartment complex nineteen days before Benford's arrest, he told Ms. Galloway to "go get a gun" from the apartment, indicating he intended to control any firearms in the apartment. We agree that a reasonable jury *could* conclude from this evidence that Benford intended to exercise control, but we also think a reasonable jury could conclude that he did not. For example, Benford's lack of surprise upon hearing about the Lorcin pistol is a strong indication he knew the firearm was in the bedroom, but a jury might not make the additional step to conclude that he also intended to exercise control over it. And although the officer who heard Benford say, "I guess I'll have to take the charge" viewed that statement as an admission that he possessed the firearm, he also acknowledged that there are "infinite possibilities" for what Benford may have meant. R. Vol. 3 at 86. Benford's statement leaves us with more questions about intent than Little's surprise that officers found only two firearms during their search.

Casting even more doubt on Benford's intent to exercise control over the pistol is the fact that he jointly occupied the bedroom, as compared to Little's exclusive possession of the small well house. Even before *Little*, we distinguished between cases in which a defendant solely occupies a space where the firearm is found versus those in which he jointly occupies the space with others. A jury may infer

19

knowledge, dominion, and control over the firearm in the former situation based on exclusive possession of the premises alone, but in the latter, the government must meet a higher burden and present some connection or nexus between the defendant and the firearm. *Jameson*, 478 F.3d at 1209. After *Little*, a jury may infer in sole occupancy cases not only knowledge, dominion, and control, but also that a defendant *intends* to control the firearm found there. 829 F.3d at 1183 ("Exclusive control over the premises allows the jury to infer the knowledge and intent to control objects within those premises . . . ." (quoting *United States v. Griffin*, 684 F.3d 691, 695 (3d Cir. 2012)). Because this case, unlike *Little*, involves joint occupancy, the government could not rely on Benford's occupancy of the bedroom alone to show knowledge, dominion, control, or intent. *See Jameson*, 478 F.3d at 1209 ("[W]here the defendant in a joint occupancy situation has knowledge of and access to the weapons, there is a sufficient nexus to infer dominion and control."). The government points to the fact that the computer bag was plainly visible in the bedroom, near the bed, and that officers could see the gun inside the open front pouch of the bag when standing over it. *See id.* at 1210 (noting that a pistol in plain view and which the defendant could easily retrieve was evidence of his knowledge of and access to the pistol). The jury could reasonably conclude from this evidence that Benford knew of and had access to the firearm—and in fact the jury made just that conclusion when it convicted Benford under our pre-*Little* standards—but a properly instructed jury would not be compelled to also conclude Benford intended to exercise control over the firearm based on this evidence. Take, for example, another item

20

officers found plainly visible in the bedroom: Ms. Galloway's purse, which officers found on top of the bed. Given the fact that the purse was plainly visible on the bed in a bedroom Benford shared with Ms. Galloway, one could easily conclude Benford knew of and had access to it, but it is harder to say that Benford also intended to exercise control over it. A jury might likewise question whether Benford intended to exercise control over the small silver pistol with pink grips. Given the comparatively weaker evidence of intent here than in *Little*, we conclude a reasonable probability exists that a properly instructed jury would not convict Benford of constructively possessing the Lorcin pistol, and thus, the jury instruction error affected Benford's substantial rights. *See Duran*, 133 F.3d at 1330 ("A plainly erroneous jury instruction affects a defendant's 'substantial rights' if the instruction concerns a principal element of the defense or an element of the crime, thus suggesting that the error affected the outcome of the case.").

Our decision is further bolstered following our decision in *United States v. Simpson*, 845 F.3d 1039, 1060 (10th Cir. 2017). In that case, a jury convicted Simpson on numerous counts of being a felon in possession after police found a variety of firearms and ammunition in Simpson's house. 845 F.3d at 1043. On appeal, Simpson challenged the omission of the intent element from the jury instructions defining constructive possession. *Id.* at 1059–60. Simpson, like Benford, failed to object before the district court, and we thus reviewed for plain error, focusing primarily on whether Simpson carried his burden to show the instructional error affected his substantial rights. *Id.* at 1060. On two counts related

21

to unlawful possession of a loaded shotgun that police found inside Simpson's garage, we concluded "a properly instructed jury would probably have arrived at the same result" because an officer testified that "Simpson had admittedly held the shotgun and tried to sell it about a month prior to his arrest," within the time period charged in the indictment. *Id.* at 1061 & n.16. But we reversed on ten other counts related to firearms and ammunition that police found in an unlocked safe and on a desk in Simpson's basement, in the kitchen cabinets and on top of the refrigerator, and under the driver's seat of a car registered to Simpson's wife. *Id.* at 1061. We first expressed doubt as to whether a properly instructed jury would have convicted Simpson since he "jointly occupied each of these locations with his wife, and visitors had access to these places." *Id.* We went on to explain that, despite evidence that Simpson admitted holding the handguns, there was "little evidence" regarding when he did so except for an occasion two months before his arrest, and thus, the jury could have concluded Simpson "handled the handguns at a time different than that alleged in the indictment." *Id.* at 1062. We concluded the failure to instruct the jury not only affected Simpson's substantial rights, but also affected the fairness, integrity, or public reputation of the judicial proceedings "because the government's evidence on intent was not overwhelming." *Id.* at 1062–63.

We find *Simpson* helpful to make the point that, in joint occupancy cases, sufficient evidence that the defendant knew of and had access to firearms may not be sufficient to also show he intended to exercise dominion and control of them. As Simpson and his wife jointly occupied the locations where police found the firearms

22

and ammunition, so too Benford jointly occupied the bedroom where police found the Lorcin pistol. And the fact that we reversed for a new trial in *Simpson* even when there was evidence Simpson had previously handled the same firearms and ammunition as that charged in the indictment seriously undermines the probative value of evidence that Benford had handled a *different* firearm from the apartment approximately three weeks before Benford's arrest. But on this point, we write with caution.

Constructive possession by definition is "not actual possession." *See Henderson*, 135 S. Ct. at 1784 ("Actual possession exists when a person has direct physical control over a thing. Constructive possession is established when a person, *though lacking such physical custody*, still has the power and intent to exercise control over the object." (emphasis added) (citations omitted)). Yet *Simpson* seemed to require actual possession to prove constructive possession when it said a jury could have concluded that Simpson "handled" or "held" the firearms and ammunition "at a time different than that alleged in the indictment." 845 F.3d at 1062. This strikes us as a departure from *Little*, which never required or even mentioned the defendant's actual handling of the firearms or ammunition to prove he intended to exercise control over them. And while evidence that the defendant actually handled a firearm outside the indictment period does not suffice to show actual possession, it may provide circumstantial evidence of the ability and intent to exercise control over the firearm necessary to establish constructive possession. We are concerned that *Simpson* may have conflated these concepts and thereby created an intra-circuit split

23

regarding the evidence required to demonstrate intent to control.  But we need not resolve this tension because we conclude under *Little* that the failure to instruct the jury on intent affected Benford's substantial rights.

## C.

Finally, we consider whether we should exercise our discretion to notice Benford's forfeited error, specifically, whether the error affected the fairness, integrity, or public reputation of the trial.  "[A] district court's failure to instruct the jury on an essential element of the crime charged won't always satisfy the fourth prong of the plain-error test," but we have before noted that reversal is appropriate when evidence supporting the omitted element is "neither overwhelming nor uncontroverted."  *Wolfname*, 835 F.3d at 1223.  The plainly erroneous jury instruction here may have allowed the jury to convict without requiring the government to prove all elements of the crime beyond a reasonable doubt.  "In light of the revered status of the beyond-a-reasonable-doubt standard in our criminal jurisprudence, a jury instruction that allows a conviction where one important element may not have been found against the defendant by such a standard cannot be overlooked."  *Duran*, 133 F.3d at 1334.  We will thus exercise our discretion to notice the forfeited error and will remand for a new trial.

## V.

For these reasons, we affirm the district court's admission of evidence under Rule 404(b) and its denial of Benford's motions for acquittal, but reverse for a new trial based on the plainly erroneous jury instruction.

24

15-6163, *United States v. Benford*

**PHILLIPS**, Circuit Judge, dissenting.

I agree with the majority's analysis until it reaches the third prong of plain-error review in section IV.B. At that stage, I would conclude that Benford has failed to meet his burden to show a reasonable probability that the jury would have acquitted him, if properly instructed on constructive possession. Nothing undermines my confidence in the outcome.

In resolving this issue, the first step should be to determine what it means for a person to intend to exercise control or dominion over a firearm.[1] I see three ways for a person to have that intent. First, a person can intend to actually possess the firearm. Second, a person can intend to direct another person's use of the firearm. *See Henderson v. United States*, 135 S. Ct. 1780, 1784–85 (2015) (observing that 18 U.S.C. § 922(g) prevents a felon from actually possessing firearms, from maintaining control over those firearms in the hands of others, and from directing the use of the firearms after transferring them). And third, a person can intend to exercise command over the location of the firearm. *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (noting that *Henderson* "observed that 'the very hallmark of possession' is that a defendant have 'broad [ ] command over the gun's location and use'" (alteration in original) (quoting *Henderson*, 135 S. Ct. at 1785 n.3)).

Under each alternative way, I see a strong likelihood the jury would have found that Benford intended to exercise control over the Lorcin pistol. In analyzing the intent-

---

[1] I am uncertain what standard the majority opinion uses to measure this element.

to-control element, I rely primarily on the evidence supporting the jury's finding that Benford knew about the pistol and had power to exercise control of it. I evaluate the evidence to see whether a jury might realistically believe that Benford was merely cohabitating with a girlfriend who brought home a firearm in disregard of Benford's desire never to be near another firearm. I consider whether Benford was merely a gun-leery felon tolerating the firearm's presence while steering clear of it. Here, the evidence shows a strong unlikelihood that the jury would have believed that Benford fit that description.[2]

The jury heard considerable evidence that bore on Benford's intent to exercise control or dominion over firearms. It heard about his earlier felon-in-possession conviction for actually possessing a firearm.[3] It read his recent cell-phone texts hinting that he had firearms to barter for a motor. And it heard evidence that he had ordered the same girlfriend to retrieve a different handgun from the same apartment just nineteen days before his arrest—to better threaten a family walking its dog. During this pistol-

---

[2] In *Little*, the court gave a hypothetical to illustrate when a person with power to exercise control over a firearm would not have intent to do so. Under the court's hypothetical, a neighbor gives a felon friend a house key to watch over the neighbor's home. 829 F.3d at 1183. Even though the felon knows that the neighbor has a firearm in his house, the *Little* court explained that the government would need to show more than that to prove an intent to exercise control over the firearm. *Id*. The hypothetical differs greatly from Benford's situation.

[3] Though I'm not sold on the reasoning of *United States v. Moran*, 503 F.3d 1135 (10th Cir. 2007), that the government may admit evidence of a felon's relatively ancient felon-in-possession conviction under Fed. R. Evid. 404(b) to help show the defendant's knowledge of a different firearm years later, I accept that the precedent binds us. But I find it much easier to see the probative value of an earlier felon-in-possession conviction to show that the felon intended to control a firearm in plain view on his shared bedroom floor.

pointing encounter, Benford hit an intent-to-exercise-control triple—he handled a firearm; he directed his girlfriend to get the gun and carry it to him from the apartment; and he exercised command over the gun's location, the apartment where he obviously had kept it for just such an occasion. Despite this potent evidence, the majority apparently feels that the jury might have believed that within three weeks of this gun-wielding behavior, Benford had reformed into a gentler soul, one no longer intending to exercise control over a firearm, not even a pistol lying in an opened bag on his bedroom floor.[4]

I disagree with how the majority applies *Little*, 829 F.3d 1177. That case is an important one because it involved the same constructive-possession instructional error as here. But *Little* came to us in a much different posture. Unlike Benford, Little objected to the district court's failing to instruct on intent to exercise control of the firearms. *Id*. at 1183. Thus, unlike here, the government bore the burden to prove that the resulting constitutional error (failure to instruct on an element of an offense) was harmless beyond a reasonable doubt. *Id*. And the government's burden grew even more stringent after it failed to argue harmless error on appeal. To affirm, the court in *Little* had to find to a *certainty* that the error had been harmless, that is, that the error was harmless beyond *any* doubt. *Id*. n.4. And *Little* did just that, reasoning that the evidence would have *compelled*

---

[4] The majority finds it important that the pistol is "little" and has pink grips. Maj. Op. at 21. Whether the pistol matched a macho-man profile, it remained effective as a means by which to threaten or harm others. In searching the apartment, police did not find the handgun that Benford had used nineteen days earlier, so we don't know whether it more matched the majority's view of what a pistol Benford would intend to exercise control over should look like. The evidence showed that Benford liked having a firearm in the apartment and that on the date of arrest the Lorcin pistol was the sole firearm there.

the jury to find that Little had intended to exercise control or dominion over the firearms. *Id*.

The majority errs in attributing this same burden to the government here. Though acknowledging that Benford has the burden to show plain error, the majority declares in the same sentence that "we are not left with the same certainty that a jury would be compelled to find Benford intended to exercise control over the Lorcin pistol."[5] Maj. Op. at 19. But the majority need not be convinced that the government would prevail under a harmless-beyond-*any*-doubt standard to affirm Benford's conviction on the plain-error standard. Instead, the majority need be persuaded only that Benford has not met his burden to show a reasonable probability that the jury would have acquitted if properly instructed.

In analyzing whether Benford has met his burden to show plain error, the majority then compares the facts in *Little* to those in Benford's case. It finds that *Little*'s facts better show intent to exercise control of firearms, primarily relying on Little's sole occupancy of the rented six-by-eight-foot well house where the firearms and ammunition were found. It contrasts Little's sole occupancy with Benford and his girlfriend's joint occupancy of the apartment bedroom. From this joint occupancy, as I understand it, the majority concludes that Benford has shown a reasonable probability that the jury may have found that his girlfriend exclusively intended to control the firearm, not even jointly

---

[5] Along the same line, the majority later says that "a properly instructed jury would not be compelled to also conclude Benford intended to exercise control over the firearm based on this evidence." Maj. Op. at 21.

4

possessing it with Benford. If Benford and his girlfriend both intended to control the pistol, then I believe that the majority would have to affirm Benford's conviction.[6]

For the reasons given, I do not believe it at all likely that the jury would have found the girlfriend exclusively intended to exercise control over the pistol. A cohabitant intending to exercise exclusive control, especially one who lives with a felon partial to using guns during sidewalk confrontations, would not leave the pistol in plain view in the shared bedroom. And, as mentioned, Benford's past actions showed the jury that he, not the girlfriend, was the household member who liked to control firearms. His bartering firearms and using a handgun to threaten a family walking its dog exceeds Little's own actions. In short, the jury had no reason to believe that in nineteen days Benford had morphed from a violent, shrieking man into a shrinking-violet man. Nor did the jury have any reason to believe that Benford's girlfriend had morphed from a submissive woman dutifully obeying Benford's snapped orders get him the gun, into a dominant woman exclusively intending to exercise control of the Lorcin pistol.

But that does not end our work. In a Rule 28(j) letter, Benford points us to *United States v. Simpson*, 845 F.3d 1039 (10th Cir. 2017). In *Simpson*, we faced another case where the district court had failed to instruct on the intent-to-exercise-control element of constructive possession. *Id.* at 1045, 1059–60. At the third prong of the plain-error

---

[6] The majority believes it important that the girlfriend's purse was found in plain view on top of the bed, apparently reasoning that if Benford had power to exercise control over it but no intent to do so, that somehow bears on whether he intended to exercise control over the Lorcin pistol. Maj. Op. at 21. I don't follow the majority's logic on this. Plainly, the purse belonged to the girlfriend, and she would be free to carry it lawfully in public and be expected to do so.

5

analysis, the court in *Simpson* determined that the defendant had shown a reasonable probability that a properly instructed jury would have reached a different outcome. *Id*. at 1062. The court based this result on two findings: (1) "the jury could have concluded that Mr. Simpson had not handled the handguns on or about June 19, 2014," and (2) this being so, "the jury could reasonably have concluded that Mr. Simpson had not intended to possess the handguns and ammunition on or about the applicable dates." *Id*.[7] In its next sentence, the court declared that "[i]n these circumstances, the instructional error affected Mr. Simpson's substantial rights . . . ." *Id*.

So *Simpson* says that a jury might well have believed that the defendant did not intend to exercise control of the firearms within the times charged in the indictment, unless the government offered evidence that he had actually possessed them (i.e., handled them) during that time. And because the government had shown only that the defendant had handled the firearms about two months before the arrest (when he was showing his wife how to shoot them), *Simpson* reversed those convictions. In Benford's case, the government can't show so much. Benford didn't expressly admit ever handling the Lorcin pistol. Under *Simpson*, I can't see how Benford would not prevail on plain-error's

---

[7] In my view, this analysis is mistaken. It ties actual possession (i.e., handling) of a firearm to constructive possession's intent to exercise control of it (describing this as intent "to possess"). It fails to weigh the government's evidence of intent to exercise control of the firearms in evaluating whether the defendant had met his burden to show a reasonable probability of a different outcome. It turns the proper analysis sideways, essentially requiring the government to show actual possession (handling) during the dates charged. Instead, the court should have required Simpson to show a reasonable probability of an acquittal on the intent-to-exercise-control element, fully considering the effect of his handling the firearms near the charged dates as well as having the firearms and ammunition strewn throughout his and his wife's house.

6

prejudice prong.[8] It would not matter how much evidence the jury heard showing intent to exercise control of the pistol.

In *Little* we affirmed a conviction beset with the same instructional error. And despite the government's not having shown that the defendant actually possessed the firearms and ammunition during the time charged in the indictment, we affirmed Little's conviction on constructive-possession grounds. *See* 829 F.3d at 1183. So I would apply *Little*, not *Simpson*. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1261 (10th Cir. 2014) ("It is axiomatic that 'when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.'" (quoting *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996))). And based on my earlier expressed views on *Little*, I would conclude that Benford has not met his burden to show a reasonable probability of a different outcome had the jury received the proper instruction.

For all reasons stated, I would affirm Benford's conviction.

---

[8] In fact, in cases like *Little*, *Simpson*, and this one (those with a constructive-possession instruction not including intent to exercise control as an element), I can't see any case that wouldn't meet the first three prongs of the plain-error analysis. After all, if the government had shown actual possession of the firearms, the jury would have convicted on that basis, and the constructive-possession issue would never have arisen, especially on appeal.