FILED
United States Court of Appeals
Tenth Circuit

April 22, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEDRIC MAYFIELD,

    Defendant - Appellant.

No. 23-1108

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:21-CR-00341-WJM-1)**
_____

Benjamin Miller, Salt Lake City, Utah, for Defendant-Appellant Dedric Mayfield.

Rajiv Mohan, Assistant United States Attorney, Denver, Colorado (Cole Finegan, United States Attorney, Denver, Colorado, with him on the brief), for Plaintiff-Appellee United States of America.
_____

Before **HARTZ**, **EID**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

On plain-error review, an appellant generally cannot obtain relief by showing a plain error alone: he must also demonstrate a reasonable probability that the result of the proceeding would have been different but for the error. A jury convicted Defendant Dedric Mayfield—a felon—of possessing ammunition in violation of 18

U.S.C. § 922(g)(1). Defendant argues the district court violated his Sixth Amendment fair-trial and Fourteenth Amendment due-process rights by instructing him to stipulate to the authenticity and admissibility of exhibits unless he had a good-faith basis not to do so. But Defendant fails to demonstrate that a reasonable probability exists that he would not have been convicted but for this instruction. He, therefore, is not entitled to relief on plain-error review.

Defendant also argues that § 922(g)(1) facially violates the Second Amendment. Precedent forecloses this argument. Thus, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

During an altercation, Defendant retrieved a .40-caliber handgun from a vehicle and fired at his adversary. The Denver Police Department recorded Defendant's conduct on a police-operated, high activity location observation ("HALO") camera.[1] Based on Defendant's five adult felony convictions, a grand jury charged Defendant with felon ammunition possession in violation of 18 U.S.C. § 922(g)(1). Before trial, Defendant did not stipulate to the authenticity or admissibility of any government exhibits.

When medical conditions rendered the HALO camera operator unavailable for trial, the government moved for a continuance, arguing that the operator had to

---

[1] The district court sentenced Defendant to the statutory maximum, in part because the Denver police previously caught Defendant on camera shooting at someone in broad daylight.

authenticate and enter the HALO footage.  Defendant volunteered to stipulate to the authenticity and admissibility of the HALO footage and allow Detective Rhoderic Patrick to testify about what the HALO footage showed from the operator's perspective.  The district court, therefore, denied the government's motion for a continuance.  Defendant did not stipulate to the authenticity or admissibility of any other exhibit.

At the pretrial conference, the district court advised Defendant that his refusal to stipulate to the authenticity and admissibility of the government's exhibits was "not acceptable."  The district court instructed Defendant "to stipulate to the maximum extent possible to the authenticity and admissibility of these [g]overnment exhibits"; to only withhold an authenticity stipulation if Defendant's counsel had "a good-faith basis to believe than an exhibit is not what it purports to be"; and to withhold an admissibility stipulation only if Defendant's counsel had "a really good reason" to object to advance his "fiduciary duties to [his] client."  The district court then warned Defendant that if Defendant withheld an authenticity stipulation without a good-faith basis, he would "be starting on a very bad footing with [the district court]," and that "[n]othing [would] put this jury to sleep quicker and derail the momentum of both sides if we have to plow through the foundational questioning to establish authenticity of an exhibit."  So Defendant stipulated to the authenticity and admissibility of some—but not all—of the government's exhibits.

The jury found Defendant guilty, and the district court sentenced Defendant to 120 months' imprisonment.

3

II.

Defendant argues the district court violated his Sixth Amendment fair-trial and Fourteenth Amendment due-process rights by coercing his counsel into stipulating to the authenticity and admissibility of the government's evidence to the "maximum extent possible." Defendant contends the district court's instructions placed the defense in "fear of vindictiveness," chilled his counsel's zealous representation, and deterred objections to evidence and testimony and thus deprived Defendant of due process and a fair trial.

A.

If a district court makes a constitutional error in a criminal trial, and a defendant properly preserves the issue, we will reverse the conviction unless the government shows the error was "harmless beyond a reasonable doubt." Davis v. Ayala, 576 U.S. 257, 267 (2015) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). But if a defendant fails to object or preserve the issue, we review only for plain error. See United States v. Olano, 507 U.S 725, 731–32 (1993) (quoting Fed. R. Crim. P. 52(b)).

Defendant concedes that he did not object to the district court's statement, nor to the government's evidence or testimony, and did not otherwise raise his due-process or fair-trial arguments in district court. But Defendant contends we should nonetheless treat the issue as preserved under the futility exception to waiver. Defendant maintains that the district court's statement—that if Defendant did not stipulate to the government's evidence to the "maximum extent possible" or else start

4

trial on a "very bad footing with [the district court]"—"sent the message to counsel that the matter was done."

Under the futility exception, an appellant "will not be stuck with plain error review for having failed to voice an objection when doing so would have been futile."[2] United States v. Uscanga-Mora, 562 F.3d 1289, 1294 (10th Cir. 2009) (citing United States v. Algarate-Valencia, 550 F.3d 1238, 1243 (10th Cir. 2008)). Accordingly, we may treat an unpreserved issue as preserved if "the district court [was] aware of the party's position and it [was] plain that further objection would be futile." Algarate-Valencia, 550 F.3d at 1243 n.4 (quoting Abuan v. Level 3 Commc'ns, 353 F.3d 1158, 1172 (10th Cir. 2003) (internal quotations omitted)).

Defendant's due-process and fair-trial arguments do not meet our standard for the futility exception. Defendant admits he did not—at any point—raise his Sixth or Fourteenth Amendment concerns to the district court. Without Defendant ever raising the issue, we have no basis to conclude that the district court was aware of his position on these issues.[3] See id. (quoting Abuan, 353 F.3d at 1172). We also cannot

---

[2] Although we initially applied the doctrine of futility in a civil case, we have expanded the doctrine to criminal cases. See United States v. Algarate-Valencia, 550 F.3d 1238, 1243 n.4 (10th Cir. 2008).

[3] Defendant's conception of the futility exception threatens to swallow Rule 52(b). If an issue could qualify for the futility exception without a party ever raising it in district court, every objection that is both unraised and meritless would be excepted from plain-error review because—by nature of being meritless—raising the issue would be futile. This exception cannot be so broad. So we stand by our precedent and require Defendant to show that the district court "considered and rejected" the issue to trigger the futility exception. Algarate-Valencia, 550 F.3d at 1243.

conclude that any "further objection" to the government's exhibits' admissibility and authenticity "would be futile." See id. (quoting Abuan, 353 F.3d at 1172). To begin with, the district court made clear that it welcomed objections having a good-faith basis. Far from conveying a closed mind, the district court's comments demonstrated a willingness to entertain good-faith objections.

And, despite the district court's "bad footing" comment, Defendant did not stipulate to every exhibit's authenticity or admissibility and objected at various points throughout trial. If the effect of the district court's comments were as represented by Defendant, he would not have objected to any of the exhibits. Accordingly, Defendant's argument that the district court would have overruled his objections is not an adequate basis to invoke futility in this context, especially when Defendant still objected.[4] Ultimately, the district court must be able to control the flow of a trial and curtail litigation strategies that might confuse the jury or cause them to lose focus on the proceedings. Defendant's position, therefore, lacks merit and cannot excuse his failure to preserve. So we review his claims for plain error.[5] See Olano, 507 U.S at 731–32 (quoting Fed. R. Crim. P. 52(b)).

---

[4] Because Defendant has failed to show he qualifies for the futility exception, we need not, and therefore do not, answer how the Supreme Court's holding in Greer v. United States affects our doctrine. 593 U.S. 503, 512 (2021) ("The . . . proposed futility exception lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents.").

[5] Pursuant to our precedent, we will review a waived issue for plain error if the appellant requests plain-error review. See United States v. Leffler, 942 F.3d 1192, 1196 (10th Cir. 2019) (quoting United States v. Lamirand, 669 F.3d 1091, 1100 n.7

B.

We reverse for plain error only if a defendant demonstrates (1) an error, (2) that was plain, (3) that affects substantial rights, and (4) that seriously affects the proceeding's fairness, integrity, or public reputation. Id. at 732 (quoting Fed. R. Crim. P. 52(b); United States v. Young, 470 U.S. 1, 15 (1985)). Because the purported error did not affect Defendant's substantial rights, we affirm—assuming without deciding that the district court plainly erred.[6]

As a preliminary matter, Defendant argues we should reverse even if the purported error did not affect substantial rights because the district court's coercive statements constitute structural error. When a district court commits structural error, our plain-error review changes: we reverse even if the appellant cannot demonstrate that the error affected substantial rights. See Weaver v. Massachusetts, 582 U.S. 286, 294 (2017) (citing Chapman, 386 U.S. at 23, n.8). We do so because structural errors

_____

(10th Cir. 2012)). Because Defendant argued in the alternative in his brief that the district court committed plain error, we review the district court's statements for plain error.

[6] Defendant argues that the district court instructed Defendant to stipulate to exhibits' authenticity and admissibility because the district court "cared most about a fast resolution." As evidence, Defendant points to other decisions of the district court: (1) overruling Defendant's objection during the government's opening statement; denying a continuance based on a sick juror; and limiting closing argument to thirty minutes per side. But as Defendant admits, whether these decisions were erroneous "is not the point." Defendant cites these decisions only as evidence of the district court's motive in instructing Defendant to stipulate to the "maximum extent possible." Because we assume without deciding that the district court's instruction was erroneous, we need not decide how these decisions would affect our error analysis.

"affect[] the framework within which the trial proceeds," infecting the whole proceeding. Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Defendant argues the error is structural because "the effects of the error are simply too hard to measure."[7] Weaver, 582 U.S. at 295. Defendant contends that the district court's statements had a comprehensive inimical effect on the quality of his representation because suggesting that his counsel would "be starting on a very bad footing" could have impacted his counsel's decisions or affected the government's confidence in introducing evidence throughout trial.

We disagree for two reasons. First, an instruction to stipulate to the authenticity and admissibility of evidence has a clear effect: easier evidence admission. Because we can identify what evidence Defendant stipulated to—before and after the instruction—that effect is clearly identifiable.

Second, Defendant's argument stretches the district court's statements beyond their reasonable consequence. The district court's instruction related to only the government's exhibits' authenticity and admissibility stipulations. The district court also reminded Defendant that he could still withhold stipulation if he had "a good faith basis," acknowledging that defense counsel retained a "fiduciary dut[y]" to

---

[7] In Weaver, the Supreme Court recognized three (non-exhaustive) categories of structural error: (1) "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest"; (2) "if the effects of the error are simply too hard to measure"; and (3) "if the error always results in fundamental unfairness." 582 U.S. at 295–96. Because Defendant only presents an argument under the second of these categories, we do not answer whether Defendant's claims implicate the remaining categories.

object in Defendant's interest.  As noted above, despite the district court's statements, Defendant did not stipulate to every exhibit's authenticity or admissibility and raised objections throughout trial.  Further, when the district court informed defense counsel that he could "be starting on a very bad footing with me" the district court also expressed concern about "put[ting] this jury to sleep" and "derail[ing] the momentum of both sides" by "plow[ing] through the foundational questioning to *establish authenticity of an exhibit*" (emphasis added).  So the district court's statements about which Defendant complains pertain only to the authenticity and admissibility of certain evidence.  We therefore conclude that the effects of these statements are clearly identifiable and measurable.  So any error extending from these statements is not structural.

C.

Because the alleged error is not structural, this issue hinges on whether the error affected Defendant's substantial rights.  See Olano, 507 U.S. at 732 (quoting Fed. R. Crim. P. 52(b)).  Establishing an error affects substantial rights requires demonstrating a "'reasonable probability that, but for the error,' the outcome of the proceeding would have been different."  United States v. Benford, 875 F.3d 1007, 1017 (10th Cir. 2017) (quoting Molina-Martinez v. United States, 578 U.S. 189, 194 (2016)).  So Defendant must show "a probability sufficient to undermine confidence" in his conviction.  United States v. Wolfname, 835 F.3d 1214, 1222 (10th Cir. 2016) (quoting United States v. Rosales-Miranda, 755 F.3d 1253, 1258 (10th Cir. 2014)).

Assuming the district court plainly erred, Defendant has not undermined our confidence in his conviction because the jury received sufficient evidence to convict Defendant even considering the purported error. To prove a § 922(g)(1) violation, the government had to establish three elements beyond a reasonable doubt. United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997). Accordingly, to establish that the district court's purported error affected his substantial rights, Defendant must establish a reasonable probability that, but for the district court's statements, the jury would have found at least one of § 922(g)(1)'s elements unsatisfied. Defendant fails to do so.

First, § 922(g)(1) requires the government to establish that a court previously convicted the defendant of a felony. Id.; United States v. Capps, 77 F.3d 350, 352 (10th Cir. 1996). Defendant stipulated that he "had been convicted of a felony" and that he "knew that he had been convicted of a felony." Defendant does not allege that the district court's statements somehow affected these stipulations, nor can he—these stipulations are unrelated to the authenticity or admissibility of the government's exhibits. So the government established the first § 922(g)(1) element.

Second, § 922(g)(1) requires the government to establish that the defendant knowingly possessed ammunition. Id. Before the purported error, Defendant stipulated to the authenticity and admissibility of the HALO footage. Defendant stipulated that he was the man the HALO footage showed firing the handgun. And Defendant agreed that Detective Rhoderic Patrick could testify about the HALO footage. Defendant cannot show the purported error tainted these stipulations

10

because he already stipulated to the authenticity and admissibility of the HALO footage before the district court purportedly erred. These stipulations allowed the jury to see the HALO footage, and to have Detective Patrick testify that the footage showed Defendant firing a handgun.[8] Because Defendant must have possessed ammunition to fire the handgun—and reasonably must have known the handgun contained ammunition to *attempt* to fire it—the HALO footage and accompanying testimony provide an adequate factual basis for the second element of a § 922(g)(1) offense, with or without the district court's purported error.

Finally, § 922(g)(1) requires the government to establish "that the possession [of ammunition] was in or affecting interstate commerce." Taylor, 113 F.3d at 1144. The government established this element through Special Agent Timothy Pine's testimony, who examined the shell casings police collected from the scene of the shooting.[9] Agent Pine testified that Remington manufactured the ammunition in Lonoke, Arkansas, and that the ammunition "travel[led] in interstate commerce" to

---

[8] Although Defendant alleges that he would have objected to various elements of Detective Patrick's testimony but for the district court's statements, Defendant does not argue that he would have objected to Detective Patrick's testimony that the video depicted Defendant firing a handgun.

[9] Because the shell casings comprised the government's Exhibits 1 and 2, the district court's instruction on authenticity and admissibility necessarily concerned the shell casings. After the district court's instruction, Defendant stipulated to the authenticity—but not the admissibility—of the shell casings. But though Defendant claims that the district court coerced this stipulation, Defendant has not alleged that Exhibits 1 and 2 were actually inauthentic or inadmissible. Without such an argument, we cannot conclude that the district court's instruction even effected this evidence's admission—much less a substantial right.

11

Colorado.  Defendant did not object to this testimony or the admissibility of the shell casings, nor has Defendant since argued that he would have objected to this testimony but for the district court's purported error.  So even without the allegedly tainted evidence, the government established the third element of a § 922(g)(1) offense.

Because the government would have established each element of a § 922(g)(1) offense without the purported error, Defendant has not undermined our confidence in his conviction or demonstrated a reasonable probability of a different outcome but for the district court's statements.  So even reviewing for plain error, the district court did not affect Defendant's substantial rights, and we affirm.

III.

Defendant also argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment under New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022).[10]

Prior to Bruen, we squarely upheld § 922(g)(1)'s constitutionality in United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009).  And after the Supreme

---

[10] Defendant concedes that he did not raise his facial constitutional challenge to § 922(g) in the district court.  We have held that facial challenges to a statute's constitutionality are not jurisdictional and instead "rest[] on a defect in the indictment."  United States v. Herrera, 51 F.4th 1226, 1284 (10th Cir. 2022), cert. denied, 143 S. Ct. 2636 (2023) (mem.).  So, according to our precedent, Defendant must demonstrate good cause under Federal Rule of Criminal Procedure 12(c) for not timely raising the issue.  United States v. Bowline, 917 F.3d 1227, 1237 (10th Cir. 2019).  But because our holding in Vincent v. Bondi, 127 F.4th 1263 (10th Cir. 2025), clearly forecloses Defendant's constitutional challenge to § 922(g), we affirm without deciding whether Defendant demonstrated good cause under Rule 12(c).

Court decided <u>Bruen</u>, we decided <u>Vincent v. Garland</u>, 80 F.4th 1197, 1200–02 (10th Cir. 2023), again rejecting arguments that the Second Amendment entitles felons to possess firearms.  We determined that <u>Bruen</u> did not expressly overrule or clearly abrogate <u>McCane,</u> so <u>McCane</u> still controlled.  <u>Vincent</u>, 80 F.4th at 1202.

The Supreme Court vacated <u>Vincent</u> and remanded for reconsideration in light of <u>United States v. Rahimi</u>, 602 U.S. 680 (2024).  <u>See</u> <u>Vincent v. Garland</u>, 144 S. Ct. 2708 (2024) (mem.).  On remand, we concluded that <u>Rahimi</u> did not undermine our earlier reasoning or result and reiterated that the Second Amendment does not render § 922(g)(1) unconstitutional.  <u>Vincent v. Bondi</u>, 127 F.4th at 1263 (10th Cir. 2025). We therefore reject Defendant's facial challenge to the felon-in-possession statute.

AFFIRMED.