FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KEVIN FOLSE, a/k/a "Criminal,"

    Defendant - Appellant.

No. 19-2065
(D.C. No. 1:15-CR-02485-JB-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

Following a three-day trial, a federal jury convicted Kevin Folse of

carjacking and being a felon in possession of a firearm, among other offenses.

The district court thereafter sentenced him to 360 months' imprisonment. He now

appeals, contesting his convictions and his designation for sentencing purposes as

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and 10th Circuit Rule 32.1. After examining the briefs and
appellate record, this panel has determined unanimously that oral argument would
not materially assist in the determination of this appeal. *See* FED. R. APP. P.
34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without
oral argument.

a career offender. We reject all of Mr. Folse's challenges. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment.

**I**

This appeal stems from a series of events that occurred throughout the early morning hours of July 2, 2015. The catalyst of the events began at around 2:00 a.m. While investigating a motor-vehicle incident, officers and detectives of the Albuquerque Police Department (the "APD" or the "Department") sought to find Mr. Folse. Receiving information that Mr. Folse was possibly at a residence located at 1825 Pitt Street, the officers set up a perimeter around the location; they lacked a warrant to enter.

While observing the residence, Detective Deloris Sanchez witnessed an individual through a window in one of the outer-facing rooms. The individual was Valente Estrada, a tenant of 1825 Pitt Street. Detective Sanchez spoke to Mr. Estrada through the window, informing him that the officers had reason to believe Mr. Folse was inside the residence. After some back-and-forth communication, Detective Sanchez instructed Mr. Estrada to leave the residence through the front door to speak with the officers.

Mr. Estrada agreed to do so, but after leaving his room to exit the residence, he never came outside of the front door. According to Mr. Estrada's

testimony, the front door had been barricaded with couches and chairs. After Mr. Estrada reported this to Detective Sanchez, she instructed Mr. Estrada to remove the furniture and exit through the front door. However, upon returning to the main entrance, Mr. Estrada was intercepted by Mr. Folse in the hallway, who called out to Mr. Estrada. Mr. Folse grabbed Mr. Estrada, and took him into a different bedroom, which belonged to Mr. Estrada's roommate.

Mr. Estrada testified that Mr. Folse had a knife in his hand. Fearing that Mr. Folse might stab him, Mr. Estrada did not resist Mr. Folse's directions. In addition to the knife, Mr. Estrada noted that Mr. Folse was armed with a silver and black gun, and when he entered into his roommate's bedroom, Mr. Estrada witnessed a group of people gathered there. Mr. Folse was in essence holding virtually all of the individuals in the room hostage. Mr. Folse's girlfriend, however, was also one of the individuals in the bedroom. Mr. Folse and his girlfriend confiscated the cellphones of the individuals in the room, in addition to the keys to Mr. Estrada's car, a silver Saturn. Concerned about being attacked, Mr. Estrada made no attempt to escape the room, nor did the other individuals present.

Throughout the time in the room—approximately two hours—Mr. Folse exhibited aggressive and violent behavior. Mr. Folse told at least one individual to sit down or he would "stab him," and on another occasion he broke a glass

table top over a woman's head. Supp. R., Vol II, at 247, 249 (Trial Tr., dated Oct. 6, 2015). Several photographs introduced at trial depicted the aftermath of the latter incident—specifically, a couch stained with blood and covered in glass, where the victim had been sitting. *Id*. 249–50, 254. During this time, the officers enforcing the perimeter outside of the residence attempted to reestablish contact with Mr. Estrada but to no avail. With no obvious signs of "duress" coming from the home, such as "screaming or yelling," and concerned that their surveillance had been "compromised," the officers remained in the area but pulled back to a point where they "could no longer monitor the activity around Pitt Street." *Id.* at 65, 68–69.

After the officers pulled back, a little before 11:00 a.m., Mr. Folse decided to leave the premises. Picking up Mr. Estrada's confiscated keys, and still armed with a gun and knife, Mr. Folse told Mr. Estrada, in a "very demanding" manner, "okay, you're going with me." *Id*. at 261. Mr. Folse and Mr. Estrada exited the residence with their respective girlfriends, and Mr. Folse got into the driver's seat of the car, with his girlfriend in the passenger seat, and Mr. Estrada seated directly behind Mr. Folse in the backseat with his girlfriend. At trial, Mr. Estrada testified that he felt scared, that he did not want anyone else to get hurt, and that he felt he had no choice but to obey Mr. Folse.

4

Meanwhile, detectives—who had been observing the house through binoculars—saw a silver car (which was Mr. Estrada's Saturn) pull out of the driveway at a high rate of speed. Driving in unmarked vehicles, the officers left their surveillance positions, and a chase ensued. During this pursuit, Mr. Folse ran through a stop sign and a red light, swerved around cars, and accelerated at various points to evade the officers. In the midst of this chase, Mr. Folse turned onto a street named Woodland Avenue, and according to Mr. Estrada, Mr. Folse threw a gun out of the car window. According to the testimony of Detective Sanchez, Woodland Avenue has two bends in the road, and when the officers who were pursuing Mr. Folse came around the second bend, they discovered the Saturn. It appears to have lost control and crashed. The Saturn was upside, with its wheels spinning. The four occupants exited the vehicle, apparently unharmed. Mr. Folse and his girlfriend took off running from the car, while Mr. Estrada and his girlfriend remained by the car.

A detective pursued Mr. Folse on foot, following him through an apartment complex and eventually arriving at a fence. Looking over the fence, the detective witnessed Mr. Folse backing out of a residential driveway in a dark Kia SUV. As Mr. Folse backed the SUV out of the driveway, a woman came out of the house running and screaming. A thirteen-year-old boy, identified as

Michael B., was sitting in the passenger seat of the Kia while waiting for his great-grandmother to give him a ride to the store.

According to Michael's testimony, while he was waiting for his great-grandmother the car was idling in the driveway and a man got into the SUV's driver's seat, put his hand on the gearshift, and told Michael he "had three seconds to get out." *Id*. at 421. At trial Michael identified the man as Mr. Folse, *id*. at 419, and testified that Mr. Folse was acting "aggressively" and breathing "heavily," as if "he [had] just r[u]n a couple of miles." *Id*. at 419–20. Michael said Mr. Folse made him feel "[s]hocked" and "scared," *id*. at 420, and that it did not seem "like a safe or good idea" to resist Mr. Folse, *id*. at 432. Michael attempted to quickly exit the Kia, but before he could jump out, Mr. Folse put the vehicle in reverse, affording Michael little time to get out. Michael ended up "[j]umping, diving out" of the vehicle, and the passenger's door hit him in the shoulder, spinning him around and causing him significant injury. *Id*. at 422.

Michael immediately ran inside the residence and dialed 911. The dispatcher asked whether the man in the car had a weapon, to which Michael responded in the negative. However, when testifying at Mr. Folse's trial, Michael stated that Mr. Folse actually had a pistol with him and identified the piece as a "[n]ine millimeter, .45 millimeter" caliber gun. *Id*. at 421.

6

After the Kia left the driveway, the detective who had been pursuing Mr. Folse on foot remained near the scene, while other law enforcement continued the pursuit of Mr. Folse. That detective was "flagged [] down" by a maintenance employee with the Bernalillo County Water Authority who "said that he had located a firearm." *Id.* at 480. Specifically, around 11:00 a.m. that day (July 2), the maintenance employee had been driving on Woodland Avenue and observed a firearm on the ground. The employee picked up the gun with a rag and turned it over to the officer.

Despite their efforts to capture Mr. Folse, law enforcement came up short on July 2. Mr. Folse successfully managed to elude police. But he was arrested the next day. A federal grand jury subsequently indicted him, and returned a superceding indictment on five counts: one count of felon-in-possession-of-a-firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1); two counts of carjacking in violation of 18 U.S.C. § 2119 (Count 2 and Count 4); and two counts of using, carrying, possessing, and brandishing a firearm during and in relation to and in furtherance of the carjackings charged in Count 2 and Count 4, respectively, in violation of 18 U.S.C. § 924(c) (Count 3 and Count 5). After a

7

three-day trial, in October 2015, a jury found Mr. Folse guilty of Counts 1–4[1]. *Id.* at 31–34. The district court sentenced Mr. Folse to 360 months' imprisonment.

## II

On appeal, Mr. Folse contends that the district court erred when it: (1) held there was sufficient evidence to support his felon-in-possession conviction; (2) instructed the jury on the elements of his felon-in-possession offense; (3) omitted the intent element from its jury instruction on constructive possession; (4) held there was sufficient evidence for his convictions on two counts of carjacking; (5) relied on Mr. Folse's two prior felony convictions of aggravated battery with a deadly weapon and possession of marijuana with intent to distribute to enhance his sentence under the career-offender sentencing guideline. We address Mr. Folse's five claims in turn, rejecting them all.

### A. Felon-in-Possession Conviction, 18 U.S.C. § 922(g)

Mr. Folse contends that the evidence was insufficient to support his felon-in-possession conviction, and the district court erred in two distinct ways in instructing the jury. Specifically, as to the latter, Mr. Folse contends that the district court erred when it did not (1) include the knowledge-of-status element in

---

[1]  Prior to trial, the district court dismissed the second brandishing-of-a-firearm count (i.e., Count 5) on motion of the government.

its felon-in-possession instruction and (2) include the proper intent element in the constructive-possession instruction.

## 1. Sufficiency of the Evidence

We review sufficiency-of-the-evidence challenges de novo. *See, e.g.*, *United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002). In so doing, "we ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Radcliff*, 331 F.3d 1153, 1157 (10th Cir. 2003) (quoting *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000)); *see United States v. Nelson*, 383 F.3d 1227, 1229 (10th Cir. 2004) ("Rather than examining the evidence in 'bits and pieces,' we evaluate the sufficiency of the evidence by 'considering the collective inferences to be drawn from the evidence as a whole.'" (quoting *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997))).

We do not assess the credibility of witnesses or weigh conflicting evidence, because those tasks are exclusively within the jury's domain. *See, e.g.*, *United States v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005). Indeed, we may reverse "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haslip*, 160 F.3d 649, 652

9

(10th Cir. 1998) (quoting *United States v. Wacker*, 72 F.3d 1453, 1462–63 (10th Cir. 1995)).  This "standard requires this court to review the trial record to determine if there is evidence to support the verdict."  *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir. 2000).

To convict Mr. Folse under 18 U.S.C. § 922(g), at the time of Mr. Folse's trial the government had to prove the following elements beyond a reasonable doubt: "(1) [the defendant] was previously convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce."  *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017).  However, approximately two months *after* Mr. Folse filed his notice of appeal, the Supreme Court clarified that there is an additional *mens rea* element that the government must prove to establish the offense.  *See Rehaif v. United States*, --- U.S. ----, 139 S. Ct. 2191, 2200 (2019); *see also United States v. Herriman*, 739 F.3d 1250, 1258 (10th Cir. 2014) ("*Mens rea* is 'the mental element of the crime charged.'" (quoting *Clark v. Arizona*, 548 U.S. 735, 742 (2006))).  In the post-*Rehaif* world, the government also must prove that the defendant *knew* that he belonged to the relevant category of individuals barred from possessing a firearm at the time of the firearm possession.  *See Rehaif*, 139 S. Ct. at 2200; *see also United States v. Benton*, 988 F.3d 1231, 1236–37 (10th Cir. 2021) (sketching the contours of *Rehaif*'s holding).

10

Invoking *Rehaif*, Mr. Folse claims that the government failed to meet this additional knowledge-of-status burden, as it has "introduced no evidence to establish that Mr. Folse knew he had been convicted of a crime punishable by more than one year in prison at the time of the firearm possession." Aplt.'s Opening Br. at 16. Mr. Folse attributes the government's failure to offer such evidence to its "erroneous interpretation of § 922(g)." *Id*. at 18. In light of *Rehaif*, Mr. Folse concludes that this court should reverse his conviction and direct the district court to enter a judgment of acquittal concerning his felon-in-possession charge. We reject this argument.

In assessing a sufficiency-of-the-evidence challenge in circumstances such as these, we "analyze the sufficiency of the evidence under the law *in effect at the time of trial*." *Benford*, 875 F.3d at 1014 (emphasis added); *Wacker*, 72 F.3d at 1465 ("[T]he government here cannot be held responsible for 'failing to muster' evidence sufficient to satisfy a standard which did not exist at the time of trial."); *see also United States v. Arciniega-Zetin*, 755 F. App'x 835, 842 (10th Cir. 2019) (unpublished) ("We must order the dismissal of any charge that the government failed to prove by sufficient evidence *under the law in force during his trial*. But if the government's proof suffices under that now-outdated law, then showing that this proof would *not* suffice under the supervening law won't win the defendant a dismissal." (first emphasis added)).

11

Here, we must analyze the sufficiency of the evidence under the law governing felon-in-possession offenses at the time of Mr. Folse's trial—that is, under the pre-*Rehaif* standard. And, under that standard, the government was not required to prove that Mr. Folse knew that he was a felon when he possessed the firearm. This state of the law is fatal to Mr. Folse's cause. He does not even attempt to argue that the evidence was insufficient to support his conviction under the pre-*Rehaif* standard. Accordingly, we reject this sufficiency-of-the-evidence claim.

### 2. Jury Instructions

Mr. Folse also contends that, even if we do not vacate his § 922(g) conviction based on the lack of sufficient evidence, a new trial is still warranted because the district court erred in omitting two required elements of its jury instructions concerning Mr. Folse's felon-in-possession offense. First, again invoking *Rehaif*, Mr. Folse contends that the district court's instructions to the jury on the elements of his felon-in-possession offense were required to include the knowledge-of-status element, and the absence of that element rendered the instructions plainly erroneous. Second, Mr. Folse contends that the instructions regarding his felon-in-possession offense were also plainly erroneous because they did not properly define the correct *mens rea* to support a constructive-possession theory of liability.

12

Usually, "[w]e review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case. " *United States v. Vernon*, 814 F.3d 1091, 1103 (10th Cir. 2016) (quoting *United States v. Richter*, 796 F.3d 1173, 1185 (10th Cir. 2015)). However, where a party fails to object at trial on a ground upon which it later seeks reversal on appeal, that party must "run the gauntlet created by our rigorous plain-error standard of review." *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012); *see* Fed. R. Crim. P. 52(b); *United States v. Visinaiz*, 428 F.3d 1300, 1308 (10th Cir. 2005) ("When no objection to a jury instruction was made at trial, the adequacy of the instruction is reviewed . . . for plain error."). Mr. Folse does not dispute that he failed to object before the district court to the two alleged jury-instruction deficiencies that he raises on appeal. Therefore, we review his instructional challenges only for plain error.

A party seeking relief under the plain-error rubric bears the burden of showing "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *McGehee*, 672 F.3d at 876 (quoting *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011)); *see also United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (en banc). "If these factors are met, [this court] may exercise discretion to correct the error

13

if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cordery*, 656 F.3d 1103, 1105 (10th Cir. 2011); *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) ("Under the plain error standard, 'even if a defendant demonstrates an error that is plain, we may only take corrective action if that error not only prejudices the defendant's substantial rights, but also seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" (quoting *United States v. Rivas–Macias*, 537 F.3d 1271, 1281 (10th Cir. 2008))).

We apply plain error "less rigidly when reviewing a potential constitutional error," *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001), as is the case here because "an improper instruction on an element of the offense violates the Sixth Amendment's jury trial guarantee," *Neder v. United States*, 527 U.S. 1, 12 (1999); *accord Benford*, 875 F.3d at 1016–17.

### a. Possession of a Firearm by a Felon

In its felon-in-possession instructions, among other things, the district court charged the jury that "Mr. Folse was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm . . . ." Supp. R., Vol. I, at 37 (Final Jury Instrs. - No. 11, filed Oct. 7, 2015). At trial, the parties stipulated to this element—specifically, the fact that he was a convicted felon at the time he possessed the firearm. But the parties did

14

not stipulate, nor did the instructions require the jury to find, that Mr. Folse knew of his felon status at the time of his firearm possession. Thus, Mr. Folse contends that the felon-in-possession instructions were plainly erroneous under the current law of *Rehaif*.

And the government freely acknowledges as much—that is, it acknowledges that, as to the knowledge-of-status element, the felon-in-possession instructions were erroneous and clearly or obviously so, when judged by the *Rehaif* standard. In other words, the government acknowledges that Mr. Folse satisfies his burden as to the first two prongs of the plain-error test. *See, e.g.*, *United States v. Benamor*, 937 F.3d 1182, 1188–89 (9th Cir. 2019) (holding that "the absence of an instruction requiring the jury to find that [the defendant] knew he was a felon was clear error under *Rehaif*" and thus the first two prongs of plain error were satisfied). However, that is as far as the government's concession goes.

Turning to the remainder of the plain-error test, we conclude that Mr. Folse's claim cannot surmount the hurdle of the third prong of that test. More specifically, Mr. Folse fails to demonstrate—as the third prong requires—that the *Rehaif* instructional error affected his substantial rights (i.e., prejudiced him). Consequently, we may end our analysis there. *See, e.g.*, *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) ("We will not reverse a

conviction for plain error unless all four prongs of the plain-error test are satisfied." (quoting *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008))).

"An error only affects substantial rights when it is prejudicial, meaning that there is 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008) (quoting *Gonzalez-Huerta*, 403 F.3d at 733); *accord United States v. Weiss*, 630 F.3d 1263, 1274 (10th Cir. 2010). Mr. Folse cannot satisfy this standard because—as the government correctly asserts—"the record leaves no doubt that [Mr. Folse] knew he was a felon," Aplee.'s Resp. Br. at 19. The government rests this assertion in substantial part on Mr. Folse's lengthy criminal history, stating:

> The record here establishes that Folse had six prior felony convictions, one of which was for possessing a firearm as a felon. For his first set of two convictions, he was given a deferred sentence of two-and-a-half years; when his probation was revoked, he was sentenced to 640 days' custody [i.e., more than 1 ½ years]. For a later set of three convictions, he was sentenced to seven years, two of which were suspended.

*Id.* at 20–21 (citing R., Vol. II, at 70–71).[2]

---

[2] The government contends that, in conducting the third-prong, plain-error analysis, "it is appropriate for the court to look to the entire record." Aplee.'s Resp. Br. at 19. Generally speaking, that approach is settled and—at least in the guilty-plea context—free from any controversy. *See, e.g.*, *United*

(continued...)

The government reasons that, had the jury been properly instructed under

*Rehaif*, the government would have been permitted to carry its burden of proof by

introducing evidence concerning Mr. Folse's criminal history and, if it had done

[2](...continued)

*States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *United States v. Edgar*, 348 F.3d 867, 872 (10th 2003). But, in this trial context, the government relies heavily on the portion of the record that contains the Presentence Report ("PSR"), which details Mr. Folse's significant criminal history. Importantly, in his reply brief, Mr. Folse does not object to such reliance on the PSR. Indeed, Mr. Folse does not meaningfully engage at all in his reply brief with the government's plain-error arguments concerning the missing knowledge-of-status element. We are aware, however, that construing the scope of entire-record review, in the context of a plain-error assessment of *Rehaif trial* error, as extending beyond the trial record (i.e., the evidence before the jury) to include the PSR, is not a universal practice—at least when considering both the third *and* fourth prongs. *See, e.g.*, *United States v. Maez*, 960 F.3d 949, 960 (7th Cir. 2020) ("The circuits have taken different approaches to the record for plain-error review of *jury verdicts* in light of *Rehaif*."); *see also United States v. Nasir*, 982 F.3d 144, 164–65 (3d Cir. 2020) (en banc) ("[C]ourts of appeals that have considered whether the government's failure to prove the knowledge-of-status element in a 922(g) prosecution is plain error . . . . have reached that result based on their preliminary conclusion that they are permitted to look outside the trial record to find evidence to plug the gap left by the prosecution at trial. The justifications offered for that view are not all of a piece."). And the Tenth Circuit does not appear to have ruled on the matter in controlling precedent. Yet, under these circumstances—especially where the opposing party, Mr. Folse, has not objected—we are willing to follow the government's approach. *Cf. United States v. A.S.*, 939 F.3d 1063, 1076 (10th Cir. 2019) (noting that "we are free to conclude that [the defendant] waived, at the very least, non-obvious arguments" challenging the government's material contention in support of the district court's judgment, by failing to address that argument "even in reply"). Accordingly, we inquire beyond the trial record to consider the PSR. "[A] future panel may need to resolve whether courts in similar circumstances can look beyond the trial record." *United States v. Arthurs*, 823 F. App'x 692, 696 n.7 (10th Cir. 2020) (unpublished).

17

so, "there is no chance that the jury would have doubted that on July 2, 2015, Folse knew he was a felon." *Id*. at 21. We agree. More to the point, Mr. Folse cannot show that there is a reasonable probability that the result of the proceeding, as it relates to his felon-in-possession charge, would have been different, if the jury had been properly instructed under the *Rehaif* standard.

In particular, the fact that Mr. Folse had actually served in two separate time frames significantly more than one year in prison—based on multiple felony convictions—leads us to conclude that Mr. Folse "lack[s] a plausible argument that he hadn't known" at the time of the instant felon-in-possession offense that he was a convicted felon. *United States v. Tignor*, 981 F.3d 826, 831 (10th Cir. 2020); *see id.* at 830 (noting that the defendant "presumably wouldn't forget that he'd spent well over a year in prison after obtaining the conviction"); *United States v. Trujillo*, 960 F.3d 1196, 1208 (10th Cir. 2020) (rejecting the defendant's third-prong, reasonable-probability argument where the defendant "was convicted of six felonies . . . . [and] served a total of four years in prison for six felony offenses." (citation omitted)); *see also United States v. Hollingshed*, 940 F.3d 410, 415–16 (8th 2019) (holding that the defendant failed to satisfy the third prong of the plain error test, where he "pleaded guilty to possession with intent to distribute cocaine in 2001, was sentenced to 78 months' imprisonment, and was imprisoned for about four years before he began his supervised release"), *cert.*

*denied*, --- U.S. ----, 140 S. Ct. 2545 (2020); *Benamor*, 937 F.3d at 1189 (concluding that the third prong of the plain-error test was not met and underscoring that "[w]hen Defendant possessed the shotgun, he had been convicted of seven felonies in California state court, including three felonies for which sentences of more than one year in prison were actually imposed on him. . . . Defendant spent more than nine years in prison on his various felony convictions before his arrest for possessing the shotgun"), *cert. denied*, --- U.S. ----, 140 S. Ct. 818 (2020).

Accordingly, Mr. Folse's claim stumbles irretrievably on the third prong of the plain-error test. *See, e.g.*, *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019) (holding that the defendant's substantial rights were not affected where there was "overwhelming proof" defendant had previously been sentenced to more than one year in prison), *cert. denied*, --- U.S. ----, 140 S. Ct. 2550 (2020).

**b. Constructive Possession of a Firearm**

Mr. Folse mounts a second instructional challenge pertaining to his felon-in-possession offense, which also must stand or fall under the rigorous plain-error rubric. This one relates to the *mens rea* component of the court's instruction concerning constructive possession. Mr. Folse contends that the district court plainly erred in not instructing the jury that, in order for the government to prove

19

that Mr. Folse constructively possessed the firearm, it must establish that he intended to exercise control over the firearm.

As a general matter, to establish a felon-in-possession offense the government must prove beyond a reasonable doubt that the defendant possessed a firearm. *See, e.g.*, *Trujillo*, 960 F.3d at 1201; *United States v. Silva*, 889 F.3d 704, 711 (10th Cir. 2018). Mr. Folse's claim centers on the theories of liability that the government may employ to establish this possession element. The government may show that, at the time of the offense, the defendant was either in actual or constructive possession of the firearm. *See Benford*, 875 F.3d at 1015 (noting that possession "may be either actual or constructive").

"Actual possession occurs where 'a person has direct physical control over a firearm at a given time.'" *United States v. Samora*, 954 F.3d 1286, 1290 (10th Cir. 2020) (quoting *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007)). As for constructive possession, at the time of Mr. Folse's trial, our precedent had long held that "[c]onstructive possession of a firearm exists when an individual 'knowingly hold[s] the power and ability to exercise dominion and control over it.'" *United States v. King*, 632 F.3d 646, 651 (10th Cir. 2011) (second alteration in original) (quoting *United States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004)). And the district court's instruction here tracked this precedent, providing that constructive possession exists when a person "who,

although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons." Supp. R., Vol. I, at 39.

However, in 2016, after the jury rendered its verdict in Mr. Folse's trial, we recognized that the Supreme Court had altered the law of constructive possession, such that "constructive possession requires both power to control an object and *intent to exercise that control.*" *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (emphasis added). Mr. Folse did not lodge an objection at his trial that effectively anticipated this change—that is, he did not object to the court's constructive-possession instruction on the ground that it elided the intent-to-exercise-control element. Nevertheless, Mr. Folse raises such an objection now.

In doing so, Mr. Folse acknowledges that he must seek relief under our rigorous plain-error standard. Yet he believes that he can satisfy this standard. The government disagrees. As with the knowledge-of-status claim, the government is willing to concede that the district court's constructive-possession instruction constitutes error under current law and that this error is clear or obvious—that is, it is willing to concede that the first two prongs of the plain-error test are satisfied. However, the government argues strongly that Mr. Folse cannot satisfy the remainder of the plain-error test. And we agree. In particular,

21

like the government, we conclude that Mr. Folse cannot clear the hurdle of the third prong of the plain-error test.

In advancing his cause, Mr. Folse argues that the government's primary evidence establishing his possession of a firearm came from one witness—Mr. Estrada—and that, in analogous circumstances, we have held that where an instruction omits an intent element, a defendant's substantial rights are affected. *See* Aplt.'s Opening Br. at 31 ("This Court has held that omitting the intent element affected a defendant's substantial rights where a government's witness provided the main proof linking the defendant with a gun."). However, we find the government's contrary argument persuasive.

Specifically, the government contends that it sought throughout the trial to establish the element of possession under an actual-possession theory—not a constructive-possession theory. In other words, the government's proof sought to establish that Mr. Folse actually possessed the firearm—i.e., that the gun was in his hand. And, according to the government, "[i]t is certain that the jury accepted this theory because it, in fact, convicted Folse of actual possession when it found, beyond a reasonable doubt, that Folse brandished the firearm as charged in Count 3." Aplee.'s Resp. Br. at 22–23. In sum, as the government reasons, "[i]t is not possible that the jury's verdict relied on a defective theory of constructive possession." *Id.* at 23.

In substance, the government's reasoning is sound, and we find it to be consonant with our independent consideration of the record. Virtually all of the evidence that the government adduced at trial as to Mr. Folse's firearm possession focused on his actual physical possession of the firearm—more specifically, on his actual handling of the firearm over an extended period of time on July 2. For example, the government elicited substantial testimony from Mr. Estrada that Mr. Folse had the gun in hand while he kept Mr. Estrada and others at 1825 Pitt Street hostage, as well as while driving Mr. Estrada's Saturn. Thus, the evidence before the jury indicated that Mr. Folse had actual possession over the firearm over the course of several hours. Under our caselaw, that was more than sufficient to satisfy the possession element of the felon-in-possession offense. *See Samora*, 954 F.3d at 1290 (noting that "to convict on actual possession, the defendant must have held the firearm 'for a mere second or two' during the time specified in the indictment" (quoting *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999))). And the government highlighted this aspect of its evidence before the jury. *See, e.g.*, Supp. R., Vol. II, 591 (government arguing at trial that it had established "Mr. Folse[] knowingly possessed a firearm" based on "testimony from Valente Estrada which indicated that he saw a firearm in Mr. Folse's hands *for several hours*" (emphasis added)).

In short, there was virtually no evidence before the jury that pointed in the direction of Mr. Folse's constructive possession of the firearm. Therefore, it is very unlikely that the jury relied on a defective theory of constructive possession here in pronouncing Mr. Folse guilty. This means that Mr. Folse necessarily cannot carry his third-prong burden of showing that—had the jury been properly instructed concerning constructive possession—the outcome of his trial as to his felon-of-possession charge would have been different. Accordingly, we conclude that Mr. Folse's second instructional challenge also fails: it does not satisfy the third prong of the plain-error test, and our analysis stops there.

## B. Carjacking Convictions, 18 U.S.C. §2119

Mr. Folse also challenges his conviction on two counts of carjacking, claiming that the government presented insufficient evidence to support both convictions. As we have mentioned, we review sufficiency-of-the-evidence challenges de novo.

To convict Mr. Folse under the federal carjacking statute, the government had to prove the following elements beyond a reasonable doubt: "(1) that [Mr. Folse] took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that [Mr. Folse] intended to cause death or serious bodily harm; and (4) that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce." *United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006). Mr. Folse argues that the evidence was insufficient as to both counts to show the "intent" element—that is, "the intent to cause death or serious bodily harm." 18 U.S.C. § 2119.

More specifically, Mr. Folse claims that the government failed to meet this burden as to the carjacking of Mr. Estrada's Saturn (Count 2) ("First Carjacking"), and the carjacking of the Kia SUV, in which the minor, Michael B., occupied the passenger seat (Count 4) ("Second Carjacking"). Regarding the First Carjacking, Mr. Folse endeavors to bolster his argument with citations to cases from our sister circuits, which purportedly contend that carjacking requires

25

"evidence that shows that a defendant directly threatened victims with actual weapons, made affirmative threatening statements, and/or physically assaulted the victims"—features that, according to Mr. Folse, neither of the two carjackings here had. Aplt.'s Opening Br. at 23–24 (collecting cases).

Mr. Folse contends in particular that the government failed to present evidence indicating that, in the First Carjacking, a gun was ever pointed at anyone to ensure compliance with the taking of Mr. Estrada's car, nor did Mr. Estrada allege that he was even so much as "threatened with or exposed to any harm at any point when Mr. Folse was taking his car." *Id*. at 25; *see also id*. at 24–25 (contending that Mr. Estrada asserted only a "general fear" which stemmed from the day's earlier events at 1825 Pitt Street). Mr. Folse presses the point that, not only was there insufficient evidence that he would have employed the firearm to inflict serious bodily harm to effectuate the taking of the Saturn, but there was no evidence that the firearm was even loaded. He argues that although Mr. Estrada may have felt "generally intimidated" by Mr. Folse's previous conduct and possession of a firearm, "there was not evidence beyond a reasonable doubt that he had a loaded firearm at the time of the taking." *Id*. at 26.

In addressing the Second Carjacking, Mr. Folse maintains that this conviction is also grounded in insufficient evidence. He argues that, absent

evidence that a firearm was used to effectuate this taking,[3] all that remained for the jury's consideration was a statement by Mr. Folse to Michael that he had "three seconds to get out of the Kia." *Id.* at 26. And, while such conduct may have satisfied the intimidation element of the offense, Mr. Folse reasons that it does not satisfy the intent element. In particular, Mr. Folse argues that the element requires proof that the defendant possessed at least the intent to seriously harm the carjacking victim, if necessary to steal the car. Instead, Mr. Folse characterizes this statement to Michael as being simply an "empty threat" or "intimidating bluff," which fails to satisfy the requisite element of intent. *Id.* (quoting *Holloway v. United States*, 526 U.S. 1, 11 (1999)).

However, having carefully considered Mr. Folse's arguments in the light of the record, we ultimately are not persuaded by them. As to both carjackings, admittedly, the incriminating evidence concerning the intent element is not overwhelming. Yet it need not be.

---

[3]    Apparently due to the equivocal nature of Michael's statements concerning whether Mr. Folse had a firearm, the government did not ask the jury to factor Mr. Folse's alleged possession of a firearm into its assessment of his guilt of the Second Carjacking. *See* Aplee.'s Resp. Br. at 29 n.8 ("The government at trial did not emphasize Michael's testimony that he saw a gun in Folse's hand and does not ask this court to rely on it now."); *see also* Aplt.'s Opening Br. at 26 (noting that, as to the Second Carjacking, "the government agreed to omit [reference to Mr. Folse's alleged possession of a firearm] from the carjacking instruction due to Michael's wavering accounts").

The question is not whether *every* reasonable factfinder—when presented with the same evidence—would have rendered a verdict of guilty; rather, it is whether *any* reasonable factfinder would have done so. *See United States v. Irvin*, 682 F.3d 1254, 1266 (10th Cir. 2012) ("In reviewing the sufficiency of the evidence and denial of a motion for judgment of acquittal, this court reviews the record de novo to determine whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt") (emphasis added); *United States v. Ramos-Arenas*, 596 F.3d 783, 787 (10th Cir. 2010) ("Admittedly, some facts may have swayed a rational factfinder in another direction. But this is not our role when reviewing the sufficiency of the evidence: we will reverse only if the jury's decision was outside the range of a rational factfinder's reasonable choices."); *United States v. Hill*, 786 F.3d 1254, 1263 (10th Cir. 2015) (noting that "the government's evidence need not remove all doubt, but merely those doubts that are reasonable").

Considering the totality of the circumstances, we conclude that a reasonable factfinder could have found beyond a reasonable doubt that the evidence was sufficient to establish the intent element. Therefore, Mr. Folse's sufficiency-of-the-evidence challenges to his two carjacking convictions must fail.

In *Holloway v. United States*, the Supreme Court focused on and interpreted the intent requirement of the carjacking statute, 18 U.S.C. § 2119. *See Holloway*, 526 U.S. at 6 (noting that "the question is whether a person who points a gun at a driver, having decided to pull the trigger if the driver does not comply with a demand for the car keys, possesses the intent, at that moment, to seriously harm the driver"). The Court held that the intent element can be satisfied when the government proves that the defendant possessed a "conditional intent" at the time he demands or takes control of the car—that is, the government need not prove that the defendant possessed "a specific and unconditional intent to kill or harm in order to complete the proscribed offense." *Id*. at 7.

While *Holloway* and its progeny no doubt require that the defendant possess the requisite intent "at the precise moment he demanded or took control of the car," Aplt.'s Reply Br. at 1, that intent must be discerned from a consideration of the "totality of the circumstances." *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005) (quoting *United States v. Malone*, 222 F.3d 1286, 1291 (10th Cir. 2000)); *accord United States v. Pena*, 550 F. App'x 563, 565 (10th Cir. 2013) (unpublished); *cf. Bushco v. Shurtleff*, 729 F.3d 1294, 1308–09 (10th Cir. 2013) ("[A]s a specific example in the context of criminal intent, this court has indicated that the required criminal intent in carjacking cases is determined from the totality of the circumstances."). And, in considering those

29

circumstances, the factfinder may determine that an "entire episode" is "sufficiently contemporaneous" with the moment the defendant took control of the vehicle "to be probative" regarding the nature of the defendant's intent. *Pena*, 550 F. App'x at 565–65.

Therefore, in our consideration of whether there was sufficient evidence that Mr. Folse possessed the requisite intent, we are not limited to a narrow point in time—that is, to the exact moment that Mr. Folse took control of the vehicles at issue—but, instead, must consider the totality of the circumstances, insofar as those circumstances are probative of his intent at those moments. Stated otherwise, in considering the totality of the circumstances, we must examine the defendant's conduct in any relevant episode that is sufficiently contemporaneous to the exact moment that the defendant took possession of the vehicle to shed light on his intent in that moment.

In this vein, we believe that a reasonable factfinder could readily conclude that all of Mr. Folse's violent and aggressive acts on the morning of July 2—i.e., the hostage-taking events and the high-speed chase—comprise one relevant episode probative of his intent. From that episode a reasonable factfinder could infer that Mr. Folse had few (if any) qualms about resorting to serious, violent acts—especially with the end of avoiding capture by the police—when he took possession of the vehicles at issue. And, more specifically, a reasonable

30

factfinder could infer that Mr. Folse possessed the conditional intent to kill or inflict serious bodily harm—that is, the intent to take such actions if he had to do so in order to obtain the vehicular means of escaping the police.

Beginning with the hostage-taking events, recall that Mr. Folse confined numerous individuals in a single room, confiscated their cellphones, and presided over them for several hours wielding in his hand both a knife and gun. When one of those individuals attempted to move, Mr. Folse threatened that person in explicit terms—saying, "sit down or he was going to stab him, kill him." Supp. R., Vol. II, at 247. Then, for reasons that are unclear, Mr. Folse broke "a glass table top" over a woman's head, *id*. at 247, 254, instructing her "not to stand up, because if she did, he was going to stab and kill her." *Id*. at 254–55. Indeed, the jury had an opportunity to see photographs depicting the aftermath of this brutal act of violence—a blood-stained couch, covered in glass, where the woman was sitting. *Id*. at 254. And it was directly on the heels of these events that Mr. Folse—still with a gun in hand—told Mr. Estrada, in a "very demanding" manner, "okay, you're going with me," *id*. at 261—fleeing with both Mr. Estrada and Mr. Estrada's girlfriend in Mr. Estrada's Saturn. Moreover, in his reckless vehicular flight, Mr. Folse demonstrated his strong intention of avoiding capture by law enforcement and his willingness to act aggressively and to risk danger to do so. To that point, he led the officers on a dangerous car chase in which Mr. Folse

31

endangered a number of other drivers on the road, as he ran a stop sign and a red light and swerved around vehicles in his flight path. Furthermore, Mr. Folse put the passengers in the Saturn itself at risk when he crashed the car, causing it to flip over.

Mr. Folse's acts of violence and aggression relating to the First Carjacking segued into the Second Carjacking, during which Mr. Folse took possession of the Kia belonging to Michael's great-grandmother, with Michael in the car. In particular, Mr. Folse jumped in the vehicle and warned Michael that he had three seconds to get out. As Michael was attempting to do so, Mr. Folse sped off, causing Michael to fall out and suffer significant injuries.

Viewed in the totality, the events in this episode—during which Mr. Folse not only expressly threatened two people's lives, but also endangered the lives of many others and, in fact, inflicted significant physical harm on two individuals—indicate that Mr. Folse was willing and able to use *whatever force* that he considered necessary to avoid capture by the police. And, more to the point, they show that Mr. Folse possessed the conditional intent to kill or inflict serious bodily harm, if he had to do so to secure the vehicular means of escape from law enforcement.

Furthermore, even if we were to assume—as Mr. Folse urges—that, in the First Carjacking, the gun in his hand was unloaded,[4] under the circumstance of this case, that fact would not avail him. Whether a gun is loaded certainly is a relevant fact in the consideration of the totality of the circumstances bearing on a defendant's intent. *See Malone*, 222 F.3d at 1291. But the unloaded status of a defendant's firearm by no means would preclude a reasonable factfinder from determining that the defendant possessed the requisite conditional intent to kill or inflict serious bodily harm. *See, e.g.*, *United States v. Fekete*, 535 F.3d 471, 478 (6th Cir. 2008) ("A look at the caselaw from this and other circuits, however, reveals that the issue of whether a carjacker's firearm was loaded has generally not been treated by the courts as outcome-dispositive. Rather, the courts have looked at the totality of the relevant circumstances, including whether there was physical violence or touching and/or direct or implied verbal threats to kill or harm." (citing our decision in *Malone*, 222 F.3d at 1291–92, in support of this proposition)); *see also United States v. Small*, 944 F.3d 490, 500 (4th Cir. 2019) (noting that "even if [the victim's] assailants carried an unloaded gun" they may

---

[4] We note that the government says that it is not definitively established by the record that the gun used in the First Carjacking was unloaded. Construing the record in the light most favorable to the government—as we must, *see Radcliff*, 331 F.3d at 1157—it is questionable whether we should give Mr. Folse the benefit of such an assumption. However, as we discuss below, this assumption ultimately does not avail Mr. Folse in any event.

33

possess the requisite conditional intent to cause death or serious bodily harm),

*cert. denied*, --- U.S. ----, 140 S. Ct. 2644 (2020).

Indeed, a gun can readily be used to inflict serious bodily harm, and even death, even if it is not loaded. *See Fekete*, 535 F.3d at 480 ("The requisite *mens rea* can be shown by evidence of an intent to use a knife, a baseball bat, brute force, or any other means that indicates an ability and willingness to cause serious bodily harm or death if not obeyed. A lack of proof beyond a reasonable doubt that a gun was loaded, therefore, does not foreclose the possibility that . . . the defendant nonetheless had the requisite conditional intent to cause death or serious bodily harm by other means (e.g., pistol-whipping or brute force) . . . ."); *see also Small*, 944 F.3d at 500 ("[A]s too many crime victims know, even an unloaded firearm is capable of causing harm.").

Moreover, the fact that Mr. Folse did not *directly* threaten Mr. Estrada is of little significance, despite Mr. Folse's insistence otherwise. Though Mr. Folse never *explicitly* threatened Mr. Estrada—including when he took control of Mr. Estrada's Saturn—his threat to kill Mr. Estrada or to inflict seriously bodily harm on him was certainly implicit in Mr. Folse's statement—expressed as an order or directive—"you're coming with me." This statement followed immediately on the heels of Mr. Folse violence-laden treatment of his hostages, during which Mr.

34

Folse threatened the lives of two occupants of the home, and caused serious injury to one of the individuals in the room.

Mr. Folse fails to supply any caselaw providing that the threat must be explicit and directly aimed at the carjacking victim. Indeed, the factual circumstances in one of the cases that Mr. Folse relies on, *Pena*, suggests to the contrary. *See Pena*, 550 F. App'x at 556 (underscoring the fact that the defendant had displayed "aggressive behavior" and evinced an unspoken "threat to shoot" an individual by placing a gun to his head, in supporting the conclusion that the requisite evidence of carjacking intent was present, even though the individual confronted by the gun had left the scene and was not the person from whose presence the vehicle was seized); *see also Fekete*, 535 F.3d at 478 (noting that in analyzing the totality of the circumstances relative to the carjacking intent question, courts look, *inter alia*, at whether there are "*implied* verbal threats to kill or harm" (emphasis added)).

In sum, considering the totality of the circumstances, we conclude that a reasonable factfinder could have found beyond a reasonable doubt that the evidence was sufficient to establish the intent element as to both of Mr. Folse's carjacking charges. That is, a reasonable factfinder could determine that Mr. Folse had the conditional intent to cause death or serious bodily harm in order to

35

take the two vehicles at issue. Therefore, Mr. Folse's sufficiency-of-the-evidence challenges to his carjacking convictions must fail.

## C. Career-Offender Sentencing Guidelines

Mr. Folse contends that neither of his two prior felony convictions of aggravated battery with a deadly weapon and possession of marijuana with intent to distribute were qualifying predicates under the Sentencing Guidelines, and therefore the district court erred in its imposition of the career-offender sentencing enhancement. *See* U.S.S.G. §§ 4B1.1, 4B1.2. Because Mr. Folse preserved this issue by filing a formal objection to the Presentence Report ("PSR"), in which he contested the application of the career-offender enhancement, we analyze this claim under de novo review. *See United States v. Mitchell*, 113 F.3d 1528, 1532 (10th Cir. 1997) ("Whether a defendant was erroneously classified as a career offender is a question of law subject to de novo review.").

## 1. New Mexico Aggravated Battery

Mr. Folse argues that his conviction for aggravated battery under New Mexico law, N.M. Stat. § 30-3-5, does not fall within the definition of "crime of violence" under U.S.S.G. § 4B1.2(a), which requires a crime to have "as an element the use, attempted use, or threatened use of physical force against the person of another." *See* Aplt.'s Opening Br. at 40. Therefore, he reasons that this conviction cannot be the predicate for a career-offender enhancement under § 4B1.1(a).

The relevant New Mexico statute provides in full:

> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
>
> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
>
> C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. Stat. § 30-3-5. Penalized as a misdemeanor under N.M. Stat. § 30-3-4, simple "[b]attery is included within the offense of aggravated battery." *State v. Duran*, 456 P.2d 880, 881 (N.M. Ct. App. 1969); *see* N.M. Stat. Ann. § 30-3-4 ("Battery is the unlawful, intentional touching or application of force to the

37

person of another, when done in a rude, insolent or angry manner.").  As specified in subsection A, aggravated battery is distinguished from this simple battery offense, in significant part, by the nature of the proscribed *mens rea*: aggravated battery requires that the touching or application of force to a person be committed "with intent to injure that person or another."  N.M. Stat. § 30-3-5(A).  And then, depending on the scope and nature of the defendant's conduct, aggravated battery is punished as a misdemeanor under subsection (B) or as a felony under subsection (C).

With this statutory background in mind, we turn to Mr. Folse's arguments. As noted, Mr. Folse argues that his conviction for aggravated battery with a deadly weapon under New Mexico law, N.M. Stat. § 30-3-5, does not fall within the definition of "crime of violence" under U.S.S.G. § 4B1.2(a).  The language of that provision upon which Mr. Folse focuses—which requires that a "crime of violence" have as "an element the use, attempted use, or threatened use of physical force against the person of another"—has been frequently referred to by our court as "the elements clause."  *United States v. Taylor*, 843 F.3d 1215, 1220 (10th Cir. 2016).

"Our inquiry under the elements clause demands application of 'the categorical approach, examining the elements of the [state] statute to see whether they meet the requirements of U.S.S.G. § 4B1.2(a)(1)'s crime of violence

38

definition.'" *United States v. Ash*, 917 F.3d 1238, 1240 (10th Cir. 2019) (quoting

*United States v. Bettcher*, 911 F.3d 1040, 1043 (10th Cir. 2018)), *petition for cert

filed*, No. 18-9639 (June 10, 2019); *see also United States v. Titties*, 852 F.3d

1257, 1265–66 (10th Cir. 2017) (discussing the categorical approach). And, in

laying the ground work for his specific contentions, Mr. Folse highlights that,

under the categorical approach, "[c]ourts must presume that a prior conviction

'rested upon nothing more than the least of the acts criminalized' by the state

statute." Aplt.'s Opening Br. at 40. (alterations omitted) (quoting *Moncrieffe v.

Holder*, 569 U.S. 184, 190–91 (2013)).

Mr. Folse's argument centers on the "physical force" component of the

elements clause. This component carries a settled meaning: it "means *violent

force*—that is, force capable of causing physical pain or injury to another person."

*Johnson v. United States*, 559 U.S. 133, 140 (2010); *accord Ash*, 917 F.3d at

1242. In a nutshell, Mr. Folse argues that one need not use "physical force" (i.e.,

violent force) to violate New Mexico's aggravated battery statute and, therefore,

his conviction under that statute does not qualify as a "crime of violence" under

U.S.S.G. § 4B1.2(a)(1).

More specifically, Mr. Folse contends that, "[w]hile § 30-3-5 defines other

types of aggravated battery[,] meeting the requirements of subsection A is

common to any version of the crime and identifies the least culpable conduct

39

criminalized by the statute." Aplt.'s Opening Br. at 40. He highlights that the

aggravated battery—which subsection A delineates—proscribes "unlawful

touching," just like the simple battery offense, and such touching "can be satisfied

with proof of mere touching, however slight." *Id.* at 42. And he elaborates:

> The slightest offensive touching can complete aggravated battery
> in New Mexico. The aggravation of the battery offense rests on
> the harm caused. Battery that inflicts or could inflict bodily harm
> or that is done with a deadly weapon are how a simple battery
> rises to aggravated battery. But these additional factors do not
> create force; it is present in the underlying unlawful touch. Since
> the prosecution does not have to prove aggravated battery was
> committed with violent physical force, it is not a violent felony
> as described in 4B1.2's force clause.

*Id.* at 42 (omitting citation to *State v. Traeger*, 29 P.3d 518 (2001)).

Thus, stated within the framework of the categorical approach, Mr. Folse's

argument may be understood as follows: the focus of the categorical analysis

should be the conduct that subsection A proscribes because that is the least

culpable conduct criminalized by the statute; like simple battery, subsection A

outlaws unlawful touching, and that may be established by proof of even mere

touching; unlawful touching is the source of the force criminalized by the statute

and the factors in subsections (B) and (C) merely relate to the harm caused by the

statute; and because unlawful touching may be established by evidence of mere

touching, it is not a categorical match for the "physical force," required under the

elements clause, that is, "*violent* force—that is, force capable of causing physical

40

pain or injury to another person." *Johnson*, 559 U.S. at 140. But we are not convinced.

It is undisputed that Mr. Folse was convicted of the felony version of the statute—that is, of an offense specified subsection (C).[5] Therefore, contrary to Mr. Folse's contention, it logically follows that our assessment of the least acts criminalized for purposes of a categorical comparison should center on the acts delineated in subsection (C).[6] A panel of our court reached just such a conclusion

---

[5]   Mr. Folse does not dispute that his conviction under § 30-3-5 is for a felony, and only subsection (C) penalizes conduct at the felony level. Furthermore, he expressly acknowledges that he was convicted of New Mexico "[a]ggravated battery with a deadly weapon," and that offense is only found in subsection (C). Aplt.'s Opening Br. at 38.

[6]   Mr. Folse does not dispute and the government assumes, for comparative purposes under the categorical approach, that § 30-3-5 is divisible—at least to the level of the three separate enumerated paragraphs. *See* Aplee.'s Resp. Br. at 35 n.9. In other words, the working assumption appears to be that, to the extent that those paragraphs set forth crimes—at the very least—the separate paragraphs provide the units for discerning the least criminalized acts to compare with the elements clause. *See Descamps v. United States*, 570 U.S. 254, 257 (2013) (noting that a divisible statute "sets out one or more elements of the offense in the alternative"); *see also Titties*, 852 F.3d at 1267 (elaborating on the concept of a divisible statute). We are content to make the same assumption as the government. *See United States v. Pacheco*, 730 F. App'x 604, 607 (10th Cir. 2018) (unpublished) (deeming a virtually identical statute to be divisible at this level). But, despite Mr. Folse's seeming admission that he was convicted of a discrete crime under a portion of § 30-3-5(C) relating to deadly weapons, the government asserts that "[t]he record does not reveal which of these theories supported Folse's conviction. Aplee.'s Resp. Br. at 35 n.9. And the government does not contend that § 30-3-5(C) is itself divisible into discrete crimes. Therefore, the government asserts that Mr. Folse's offense "required proof that he touched or applied force to another person in a rude, angry, or insolent way, with

(continued...)

41

in a persuasive unpublished decision that addressed a virtually identical New Mexico statute, outlawing aggravated battery against a household member. *See United States v. Pacheco*, 730 F. App'x 604, 609 (10th Cir. 2018) (unpublished).

And, in doing so, the *Pacheco* panel had occasion to address and reject an argument like Mr. Folse's that asserted that the force component of the statute may be proved by no more than mere touching.[7] Specifically, the panel reasoned:

---

[6](...continued)
the intent to injure, plus that he either (1) inflicted great bodily harm; (2) committed the battery with a deadly weapon; or (3) committed the battery in a manner whereby great bodily harm or death could be inflicted." *Id.* at 34–35. We have no need to opine on whether subsection (C) itself is divisible; it has no bearing on our resolution of this appeal.

[7]      As quoted in *Pacheco*, the statute provided that:

A. Aggravated battery against a household member consists of the unlawful touching or application of force to the person of a household member with intent to injure that person or another.

B. Whoever commits aggravated battery against a household member by inflicting an injury to that person that is not likely to cause death or great bodily harm, but that does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.

C. Whoever commits aggravated battery against a household member by inflicting great bodily harm or doing so with a deadly weapon or doing so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

*Pacheco*, 730 F. App'x at 607 (quoting N.M. Stat. § 30-3-16).

42

> Pacheco argues that committing aggravated battery against a household member "in any manner whereby great bodily harm or death can be inflicted," N.M. Stat. Ann. § 30-3-16(C), does not require violent force because it can be "satisfied with proof of mere touching, however slight," Aplt. Opening Br. at 4. We disagree with Pacheco's characterization of the statute. Aggravated battery against a household member requires that the touching be done with an "intent to injure," N.M. Stat. Ann. § 30-3-16(A), and in "any manner whereby great bodily harm or death can be inflicted," *id.* § 30-3-16(C)).

*Id.* In effect, under the *Pacheco* panel's construction of the statute, though subsection (A)'s definition of aggravated battery is effectively incorporated into subsection (C)—most notably insofar as it requires that an unlawful touching be "with intent to injure"—in prescribing a felony offense, subsection (C) specifies acts that require proof of a stepped-up level of unlawful force. *See id.* at 607 (introducing the statute, by noting that it "consists of a definitional subsection followed by alternative subsections establishing the crime as either a misdemeanor or felony based on the resulting harm"). Like the government, we believe that *Pacheco*'s construction of the statute is applicable to the terms of the statute at issue here, § 30-3-5. *See* Aplee.'s Resp. Br. at 35 (noting that "each of the aggravating factors [in subsections (B) and (C) elevates the type of qualifying force above the mere offensive touching that can form a simple battery").

Morever, we recognize that Mr. Folse's reluctance to accept such a construction is predicated in substantial part on the belief that the extent of force—under *Johnson*'s physical-force standard—cannot be measured by the

43

extent of potential harm. *See* Aplt.'s Opening Br. at 42 ("The aggravation of the battery offense rests on the harm caused. . . . But these additional factors do not create force . . . ."); *see also* Aplt.'s Reply Br. at 10 ("The elements of physical injury and physical force simply cannot be used interchangeably."); *id.* at 11 ("An offense falls within that [elements] clause only when it requires proof of an underlying forceful, violent physical act imparted to another's body."). But such a belief flies in the teeth of *Johnson*'s conception of physical force: it is "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Furthermore, in *United States v. Ontiveros*, we read the Court's cases as rejecting the notion that there is no necessary nexus between the effect of the force and the physical-force standard of *Johnson*. 875 F.3d 533, 536–537 (10th Cir. 2017) (harmonizing *Johnson* with the Court's subsequent decision in *United States v. Castleman*, 572 U.S. 157 (2014)). The *Pacheco* panel had previously rebuffed in persuasive fashion a defendant's similar beliefs under a like rationale. 730 F. App'x at 609 (rejecting the idea that "the degree of force required by [] *Johnson* cannot be measured in terms of the resulting harm"). Accordingly, we conclude that there is no merit in Mr. Folse's belief concerning the nexus of force and harm.

The foregoing analysis fatally undercuts Mr. Folse's argument that, under the categorical approach, the elements of his aggravated battery conviction do not

require the requisite physical (i.e., violent) force to satisfy the elements clause. Given that his focus in discerning the least acts criminalized was on subsection (A), Mr. Folse spills virtually no ink on affirmatively arguing about which of the acts proscribed in subsection (C) constitutes the least act criminalized and whether those acts meet the *Johnson* test for physical force. The closest he comes to doing so is in objecting to *Pacheco*'s conclusion that one of the discrete set of acts proscribed by the statute at issue there—which resembles a set of acts in subsection (C)—does not satisfy *Johnson*'s test for physical force. *See* Aplt.'s Reply Br. at 10. But he only does so under his belief—now shown to be misguided—that there is no necessary nexus between the harm effected and the force used. *Id.* ("That the New Mexico statute proscribes the infliction of great bodily harm does not create a requirement of physical, violent force. The *Pacheco* Court conflated the use of violent force with the causation of injury."). Accordingly, that argument gets Mr. Folse nowhere.

Absent a meaningful argument from Mr. Folse concerning which of the acts proscribed in subsection (C) constitutes the least act criminalized and whether those acts meet the *Johnson* test for physical force, we deem the matter waived. *See, e.g.*, *United States v. Pursley*, 577 F.3d 1204, 1231 n.17 (10th Cir. 2009) (noting that "skeletal reference [to an argument in briefing] does not present a cognizable issue for appellate review" and consequently the issue is waived).

And, therefore, Mr. Folse's "crime of violence" challenge, which is centered on the physical-force issue, fails.

In sum, we conclude that the district court did not err in concluding that Mr. Folse's conviction under New Mexico's aggravated-battery statute, § 30-3-5, constituted a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a).

## 2. Possession of Marijuana with Intent to Distribute

Mr. Folse also challenges the district court's classification of possession of marijuana with intent to distribute as a "controlled substance" offense under § 4B1.2(b) based on "compelling policy reasons as to why this offense should not be used to trigger an enhancement as severe as the Career Offender guideline." Aplt.'s Opening Br. at 43. Although conceding that possession of marijuana with intent to distribute falls within the definition of a "controlled substance offense," *id.*, Mr. Folse claims that, in New Mexico, a first offense of possession with intent to distribute marijuana is treated as a low-level felony, such that it is treated in the same fashion as simple possession of marijuana.

Next, Mr. Folse points out that marijuana is now legal for recreational purposes and medical purposes in various states; in particular, it is legally available for medical purposes in New Mexico. *Id.* at 43–44. And, seeing as "evidence was presented that Mr. Folse suffers from a medical condition which would qualify him for lawful medical marijuana" (though what the condition is, he does not say), Mr. Folse reasons that it would be "fundamentally unfair to use this relatively minor offense"—which punishes conduct that "could have been legal as to him"—to significantly enhance his sentence under § 4B1.2(b). *Id.* at 44.

However, the government counters that policy reasons of the kind that Mr. Folse articulates are only proper considerations for a sentencing court *after* it has arrived at a proper Guidelines calculation—more specifically, *after* the court has determined whether the career-offender enhancement is applicable. Then, the court may properly consider such policy concerns in determining an appropriate and just sentence under the factors of 18 U.S.C. § 3553(a). And, accordingly, the government contends that the district court did not err in "refusing to let those [policy] arguments sway the correct calculation under the Guidelines." Aplee.'s Resp. Br. at 38.

We agree with the government. Mr. Folse's policy arguments do not provide the proper foundation for attacking the district court's computation of his Guidelines sentence and, more specifically, the court's determination that Mr. Folse's conviction for possession of marijuana with intent to distribute constitutes a "controlled substance" offense under § 4B1.2(b). Accordingly, we reject Mr. Folse's sentencing argument concerning this marijuana offense.

## III

For the foregoing reasons, each of Mr. Folse's claims of error fails. We accordingly **AFFIRM** his conviction and sentence.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

48